## BRADDY & GAYLORD v. NEW YORK BOWERY FIRE INSURANCE COMPANY.

### *Arbitration—Bad Faith—When Agreement Ends.*

1. While an agreement in a policy of insurance to submit to arbitrators the single question of the amount of loss by fire sustained by the insured is not invalid, yet a contract which ousts the jurisdiction of the Courts by leaving all other matters involved in any controversy that may arise between insurer and insured to such arbitrament, is void as against public policy.

2. When either party to an arbitration acts in bad faith in order to defeat its real object, the other is absolved from duty with regard to it.

3. Where, by the terms of an agreement to submit to appraisers the question of the amount of loss by fire, the appraisers, when appointed, were to meet at a certain place and on a certain date, and the parties were to waive all further notice of the meeting on that day, or their subsequent meetings, and the appraisers met, the parties will be presumed to be cognizant of all that was done by the arbitrators.

4. It is not unreasonable for an arbitrator, acting with a view to secure the service of an unprejudiced, competent and honest umpire, to insist that only the names of persons living in the vicinage, or in the State, or in some way known to him, at least by reputation, shall be tendered to him to act as such.

5. When the failure of an arbitration is evidently due to the unreasonable conduct of the arbitrator selected by one of the parties who had notice of all that was done by such arbitrator, the agreement for arbitration may be considered as ended.

CIVIL ACTION, heard at May Term, 1894, of FORSYTH Superior Court.

From the judgment on a verdict for the defendant, the plaintiffs appealed.

The facts sufficiently appear in the opinion of Associate Justice AVERY.

Messrs. *Watson & Buxton* and *Jones & Patterson*, for plaintiffs (appellants).

Messrs. *Glenn & Manly,* for defendant.

AVERY, J.: While it is well settled that an agreement in a policy of insurance to submit to arbitrators the single question of the amount of loss by fire sustained by the person insured is not invalid (*Manufacturing Co.* v. *Insurance Co.,* 106 N. C., 28 ; *Carroll* v. *Insurance Co.,* 72 Cal., 297), it is equally well understood that a contract which would oust the jurisdiction of the Courts by leaving all of the matters involved in any controversy that might arise between insurer and insured to such arbitrament is void as against public policy. Angel on Insurance, 431 ; *Scott* v. *Avery,* Ex. S. C., 20 En. L. & E. Rep., 327 ; *Sancilito* v. *C. U. A. Co.,* 66 Cal., 256 ; 2 Biddell on Ins., sec. 1154. If a stipulation in the policy to submit all controverted questions that may arise in case of loss to arbitrators cannot be enforced, will the Courts allow a contract making the submission of the single question of the amount of loss sustained, to deprive a plaintiff of the opportunity to try the issues of fact involved, of his right to recover before a jury by reason of the misconduct of the parties or of the arbitrators? If either party acts in bad faith in order to defeat the real object of the arbitration, the other is absolved from duty in regard to it, and from any obligation to enter into a new agreement for abitration. 2 May on Ins., sec. 496b ; *Uhrig* v. *Insurance Co.,* 101 N. Y., 362 ; Wood on Ins., sec. 230. "A claimant under such a policy," said the Court in Uhrig's case, *supra,* " cannot be tied up forever without his fault and against his will." Citing that case to sustain the proposition, Biddell, in his work on Insurance, section 1162, says: " Where each party duly selects an arbitrator, but the umpire fails of selection, it is said there need not be a new arbitration." The Supreme Court of Pennsylvania, in *Commercial, etc., Insurance Co.* v. *Hoiking,* 115 Pa.

State, 416, held that where two arbitrators, appointed under an agreement like that in the policy sued on, failed to agree, then a suit brought by the plaintiff should be deemed a revocation of such an agreement. The parties can contract that, at the written request of either of them, they will each select an arbitrator and empower them to choose an umpire; but if the Courts should give their sanction to any course of conduct on the part of the insurer or of the arbitrator selected by the defendant, that might be repeated in any case which might arise and operate to indefinitely delay the precedent arbitration and prevent the bringing of an action, it would manifestly enable the insurer by appointing an interested and corrupt appraiser to accomplish indirectly what the law declares shall not be done directly by virtue of a stipulation or agreement.

By the terms of the contract to submit to the appraisers, they were, when appointed, to meet in the town of Winston on the 1st day of December, 1892, and the parties were to waive all further notice of the meeting on that day, or their subsequent meetings. The plaintiffs named one L. G. Cherry, of Winston, and the defendant selected one Westbrook, of Atlanta, Georgia. When the two met, we must assume that the defendant, having waived all claim to further notice, was cognizant of all that was done by the arbitrators selected. The first proposition, emanating from Westbrook, was to select one Wilson, a resident of Winston. Cherry objected, and assigned as a reason that Wilson had already been suggested by another insurance company, liable for the same loss, as a suitable appraiser to act for it in estimating the very same loss. This objection was not an unreasonable one, since, supposing that Cherry's objection was to secure the services of not only honest, but unprejudiced men, he did what any cautious lawyer would have advised his client to do in reference to a juror when he objected to having the rights of the plaintiff passed upon by a man who might be

biased by the fact of his selection by another company which was antagonistic to the plaintiff, to represent it in passing upon the very same question. The next move was also made by Westbrook, when he proposed that each appraiser should nominate three men for umpire, and the two should try to agree upon one of the six so selected. Cherry named three business men of the town of Winston, to all of whom Westbrook objected, but it does not appear that he assigned any cause. Westbrook named three persons, all residents of the State of Georgia. Cherry objected, and stated as a reason for so doing that they all lived in the State of Georgia, and, as we assume, were unknown to him. The trial of the question of the amount of loss was to be left for decision to appraisers instead of a jury, to whom but for the agreement the plaintiff might have demanded that it be submitted. We do not think it unreasonable for an appraiser, acting with a view to secure the services of an unprejudiced, competent and honest associate, to insist that only the names of persons living in the vicinage, or in the State, or in some way known to him, at least by reputation, should be tendered to him to take the place and discharge the functions of a juror. The failure of the arbitration was evidently due to the unreasonable conduct of the appraiser selected by the defendant, and they had notice of all that was done by him. It is not necessary for us to follow the ruling of the Court of Pennsylvania in holding that, in any failure of arbitrators selected to agree, the plaintiff is left at liberty to sue, though good reasons could be given for so doing. But in this particular case, where the defendant permitted the appraiser, chosen by it, to leave for Georgia, giving his address to Cherry, after acting so unreasonably, and held its peace then and thereafter till the 10th of February, 1893, when the summons was issued, it is manifest that if the company did not intend or consent, by dilatory measures, to defeat the bringing of an action altogether, the success of the stratagem adopted by

Westbrook, if approved, might point out the way for an unscrupulous agent in the future designedly to accomplish what the law would declare unlawful if it were attempted by means of the enforcement of a contract.

The Court instructed the jury that if they believed the evidence, to find by an affirmative response to the first issue that the arbitration was still in force. In this ruling we think that there was error. As another trial will be had, and other additional evidence may be brought out bearing on the other questions involved, we deem it unnecessary to advert to any other exception.

New Trial.