RICHARD HARDIN v. THE LIVERPOOL AND LONDON AND GLOBE
INSURANCE COMPANY, LTD.

(Filed 8 April, 1925.)

1. **Insurance, Fire — Contracts — Policies — Stipulations — Provisions—
    Waiver—Knowledge.**

    Where a policy of fire insurance has been issued under the statutory standard form, the condition therein of sole and unconditional ownership of the insured cannot be held to have been waived by the insurer or its agent in the absence of knowledge that the insured's ownership was otherwise than stated in the policy contract.

**2. Insurance, Fire—Contracts—Policies—Statutes—Parol Agreements— Sole Ownership.**

In the absence of fraud an insurance company cannot be held liable upon a parol contract alleged to have been made by its agent, which is contradictory of and totally inconsistent with the standard form prescribed by statute, C. S., 6436, 6437.

**3. Same—Tender—Unearned Premiums—Trials.**

Where a contract of fire insurance provides that the insurer shall return the unearned portion of the premium to invalidate the policy under the condition that the insured had not the sole and unconditional ownership of the property insured without proper provision to that effect appearing in the written policy: *Held*, in an action upon the policy to recover the loss thereunder, a tender of the unearned premium made upon the trial is sufficient.

VARSER, J., having been of counsel did not sit, and took no part in the decision of this case.

APPEAL by plaintiff from *Calvert, J.*, at December Term, 1924, of ROBESON.

On 26 August, 1921, the defendant issued to the plaintiff a certain policy of insurance covering his dwelling-house situated on the east side of the Fayetteville road seven miles north of Lumberton. The policy was of the standard form (C. S., 6437) and contained the statutory provisions, among which were these:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; or (c) if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property insured hereunder by reason of any mortgage or trust deed; or (d) if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard); or (3) if this policy be assigned before a loss.

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damages occurring: (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy, or (b) while the hazard is increased by any means within the control or knowledge of the insured.

"No one has power to waive any provision or condition of this policy except such as by the terms of the policy may be the subject of agree-

ment added hereto, nor shall any such provision or condition be waived unless the waiver is in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be waived by any requirement, act or proceeding on the part of this company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless granted herein or by the rider added hereto." It contained also the usual provision in reference to the proof of loss.

At different dates the plaintiff executed deeds of trust on the property insured as follows: On 17 September, 1920, a deed of trust to T. L. Johnson, trustee for H. J. Wessell, and on 12 February, 1921, a deed of trust to Dickson McLean, trustee for R. D. Caldwell & Son, both of which were outstanding and uncanceled at the time the policy was issued. Without notice to the defendant the plaintiff on 27 December, 1921, executed an additional deed of trust to I. K. Biggs, trustee for K. M. Biggs covering the same property.

The proof of loss signed by the plaintiff contained this paragraph: "The property insured belonged to Richard Hardin, and no other person or persons had any interest therein except . . .'"

At the close of the evidence his Honor announced that he would instruct the jury to return a negative answer to the issue, "Is the defendant indebted to the plaintiff?" Upon this intimation the plaintiff excepted, submitted to a nonsuit, and appealed.

*F. Ertle Carlyle and McLean & Stacy for plaintiff.*
*Johnson, Johnson & McLeod for defendant.*

ADAMS, J.   The defendant resisted recovery on the ground that the plaintiff at the time he procured the policy was not the sole and unconditional owner of the insured property, although in his proof of loss he made oath that no other person was interested in it. In his complaint the plaintiff declared on the contract of insurance, but in his reply to the answer he alleged that the defendant had waived the pleaded provision that the ownership of the property must be sole. The basis of the alleged waiver is laid in the plaintiff's testimony, the material part of which is substantially as follows: "I told him (the agent) I would leave it absolutely to him for protection and he wrote me a policy. He said he would put me in a company that would absolutely protect me from any loss by fire in any way. When I told him I would leave it absolutely with him what policy to write he told me not to be uneasy, he would put me in a company that would protect me from any fire whatever, to rest easy. He didn't ask me about any mortgages whatever. . . .

When the policy came back to me I put it in my trunk. I am not an educated man. I am an Indian and can read a little bit, not good. I cannot understand the terms of the policy. I cannot read it well enough to tell what it was. I just thought it was all right. I relied upon the statements made to me by the agent of the insurance company that it would protect me. I never did read it over. I wouldn't understand the clause stating that the interest of the insurer would be "unconditional sole ownership" would prevent me from giving a mortgage."

The plaintiff does not contend that the agent made any false representation which would avoid the policy, but rather that he waived the provisions of the written contract regarding the sole ownership of the property and that the defendant for this reason is liable to the plaintiff for the loss he sustained.

The generally accepted definition of a waiver is the intentional relinquishment of a known right. It is a voluntary act and implies an election by the party to dispense with something of value or to forego some advantage which he might at his option have demanded and insisted on. 27 R. C. L., 904. In *Mfg. Co. v. Building Co.*, 177 N. C., 103, it is said that a party cannot waive that of which he has no knowledge. It is also said that there are several essential differences between waiver and estoppel; that waiver involves both knowledge and intention, the one being essential to the other and exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right. Pages 106, 107. There is no evidence that the agent had any information of the outstanding deeds of trust, and the doctrine of waiver cannot be invoked on the ground that the defendant with knowledge of their existence issued the policy with intent to waive the requirement of sole ownership.

The plaintiff, however, rests his contention on another proposition. He argues that the agent negligently failed to make any inquiry as to the ownership of the land or as to any encumbrances upon it, that the plaintiff did not comprehend the form and meaning of the policy and relied upon the agent's promise fully to protect him; and that by accepting the premium the defendant contracted in any event to save the plaintiff harmless from loss by the burning of the property insured. The contention involves two propositions: (1) that it was the duty of the agent particularly to inquire into the question of sole ownership, and (2) that his failure to do so combined with the plaintiff's evidence amounted substantially to an unconditional contract of insurance by the terms of which the defendant without regard to the stipulations in the policy became absolutely liable for the plaintiff's loss.

We cannot approve the position that in the absence of a request it was the agent's legal duty to explain the meaning and effect of all the provisions in the policy, or that his failure to inquire as to outstanding mortgages was a waiver of the requirement of sole ownership. We do not understand the cases cited by the plaintiff as warranting this conclusion. In *Modlin v. Ins. Co.,* 151 N. C., 35, the validity of the policy was recognized after the adjustment and appraisal of loss by remittance to the local agent and notice to the assured; and in *Ins. Co. v. Lumber Co.,* 186 N. C., 269, the agent who wrote the policy knew at the time that the property was owned by the assured and others. It clearly appeared that the defendant with full knowledge had waived the provisions of the policy pleaded in avoidance of the recovery; and the principle was upheld in *Bullard v. Ins. Co., ante,* 34. In these and other similar cases the insurer in effect admitted liability with knowledge of the facts constituting a breach of the provisions.

In the case before us another principle may be applied. The plaintiff was not an educated man, but he could read and write. He did not read the policy or request the agent to read it. A person who can do so is generally required to read a written contract before signing or accepting it and ordinarily his failure to do so is negligence for which the law affords no redress. This principle, of course, would be modified in case of positive fraud, but here no fraud is alleged or relied on. *Leonard v. Power Co.,* 155 N. C., 10; *Carson v. Ins. Co.,* 161 N. C., 441.

It is obvious, then, that the substance of the plaintiff's contention when analyzed is this: that the plaintiff and the defendant's agent entered into a parol contract, utterly at variance with and contradictory of the written contract, by which the defendant unconditionally insured the plaintiff against loss by fire. Can such a contract be enforced under the facts disclosed by the record?

The policy sued on is of the standard form prescribed by statute. It is provided that no fire insurance company shall issue fire insurance policies on property in this State other than those of the standard form duly filed and designated as the standard fire insurance policy of the State. C. S., 6436, 6437. This form of policy contains a provision against waiver, and a waiver of the stipulations or conditions in the policy has been permitted only under circumstances similar to those in the cases of *Modlin v. Ins. Co.* and *Bullard v. Ins. Co., supra,* and has never been extended in this jurisdiction to the approval of a contract entirely separate and distinct from the standard form. To sanction the power to make such a contract would be equivalent to the destruction or abolition of the form prescribed by law.

In our opinion there was no waiver by the defendant of the conditions in the policy, and the fact that the sole and unconditional ownership

of the insured property was not in the plaintiff and that the defendant knew nothing of the outstanding deeds of trust was sufficient under the decisions of this Court to invalidate the contract of insurance. *Hayes v. Ins. Co.,* 132 N. C., 703; *Weddington v. Ins. Co.,* 141 N. C., 234; *Modlin v. Ins. Co., supra; McIntosh v. Ins. Co.,* 152 N. C., 50; *Lancaster v. Ins. Co.,* 153 N. C., 285; *Watson v. Ins. Co.,* 159 N. C., 639; *Bank v. Ins. Co.,* 187 N. C., 97.

During the argument it was urged by the plaintiff that there had been no return or tender of the premium paid by the plaintiff. The judge suggested an amendment of the complaint but the plaintiff for obvious reasons declined to make the amendment. The defendant in open court then tendered the amount of the premium and the interest thereon from the date of the policy. The course pursued by the defendant was approved in *Weddington v. Ins. Co., supra,* in which it is said: "It is argued, though, that the company should have returned or at least tendered the unearned portion of the premium before it could insist upon a forfeiture. The policy expressly provides that the unearned portion of the premium shall be returned on surrender of the policy. This is the contract of the parties, and we are not permitted to change it. There has been no surrender of the policy, but the complaint is drawn and the trial proceeded, upon plaintiff's part, upon the theory that the policy was valid and would not, therefore, be surrendered. The condition precedent to the return of the premium has not been performed, but a refusal to comply with it is to be clearly implied. It has been held in a number of cases that in a case of a breach of condition which invalidates the policy, the company is not bound at its peril, upon notice of such breach, to declare the policy forfeited or to do or say anything to make the forfeiture effectual, and a waiver will not be inferred from mere silence or inaction on its part. It may wait until claim is made under the policy, and then rely on the forfeiture in denial thereof or in defense of a suit brought to enforce payment of it. 6 A. & E. (2 ed.), 939; *Dowd v. Ins. Co.,* 1 N. Y. Supp., 31; *Ins. Co. v. Brecheisen,* 50 Ohio St., 542; *Harris v. Assn. Society,* 3 Hun., 725; *Flynn v. Ins. Co.,* 78 N. Y., 569; *Ins. Co. v. Hull,* 77 Md., 498; *Todd v. Ins. Co.,* 100 N. W., (Mich.), 442. The principle is distinctly recognized and approved by this Court in *Perry v. Ins. Co.,* 132 N. C., 283."

We find

No error.

VARSER, J., having been of counsel did not sit and took no part in the decision of this case.