STAR VARIFOAM CORPORATION OF AMERICA v. BUFFALO REINSURANCE COMPANY

No. 8222SC850

(Filed 4 October 1983)

Insurance § 122— fire insurance policy—failure to maintain sprinkler system in good order

Plaintiff was not entitled to recover under a fire insurance policy because plaintiff's sprinkler system was not maintained in good order as required by the policy where the evidence clearly showed that there was a leak or crack in the main sprinkler line which had been there for some time and which was known to plaintiff or its agents; the crack allowed the water from the storage tank to leak at such a rate that the tank completely emptied in approximately three days; the last time the tank had been filled was one to two months before the fire; the tank was empty at the time of the fire; and even if the tank had been filled with water the sprinkler system could not have operated because the valve allowing water to enter the system was closed.

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 18 February 1982 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 20 May 1983.

This is a civil action wherein the corporate plaintiff seeks to recover proceeds allegedly due under a fire insurance policy underwritten by defendant. The plaintiff, a corporation engaged in the business of manufacturing polyurethane foam for use in the furniture industry, occupied a building (hereinafter the "Star building") in Thomasville owned by its individual shareholders. In February 1979, plaintiff purchased from defendant's agent an insurance policy covering plaintiff's building and personal property located inside the building. The insurance policy, which was in effect from 19 January 1979 until 19 January 1982, provided for maximum coverage of $500,000.00 for the contents of the building subject to a $5,000.00 deductible.

On 2 April 1980, a fire destroyed the insured premises and its contents. Plaintiff filed a proof of loss statement with defendant claiming losses in excess of the $500,000.00 personal property coverage limits. Defendant, as part of its investigation of plaintiff's claim, conducted examinations of certain employees and shareholders of plaintiff under oath, and the transcripts are part of this record. After investigation, defendant denied coverage under the policy.

After plaintiff initiated this action, defendant filed an answer denying the material allegations in the complaint and asserting certain affirmative defenses including the failure of plaintiff to render a signed and sworn proof of loss statement to defendant as required, the failure of plaintiff to maintain the protection devices provided for the safety of the insured property as required, and the submission by plaintiff of false or fraudulent claims. Following pretrial discovery, defendant filed a motion for summary judgment accompanied by supporting affidavits. The affidavits included statements of Charles R. Manning, a professor of material engineering at North Carolina State University who conducted a study of the sprinkler system at the Star building, and Philip Olshinski, an investigator for the Thomasville Fire Department.

Plaintiff countered with the affidavit of James Samuel McKnight, a professional engineer employed by Research Engineers, Inc., who observed the tests done on the sprinkler system by Mr. Manning.

From the court's grant of defendant's motion for summary judgment, plaintiff appealed.

*Fairley, Hamrick, Monteith and Cobb, by S. Dean Hamrick and F. Lane Williamson, and White and Crumpler, by Fred G. Crumpler, Jr., and William E. West, Jr., for plaintiff appellant.*

*Tuggle, Duggins, Meschan, Thornton and Elrod, by Joseph E. Elrod, III, and Joseph F. Brotherton, for defendant appellee.*

JOHNSON, Judge.

Plaintiff assigns as error the court's granting of summary judgment for defendant. Rule 56(c) of the North Carolina Rules of Civil Procedure provides that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." An issue is genuine if it "may be maintained by substantial evidence." *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 268 S.E. 2d 190 (1980); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971).

Defendant claims plaintiff forfeited its right to recovery under the insurance policy by violating certain of its conditions. A breach of a policy condition bars any recovery under the policy. As stated in Couch on Insurance, Vol. 7, § 36:53 (2d ed. 1961):

The acceptance by the insured of a policy which includes conditions imposes upon him the duty of complying therewith, and failure so to do releases the insurer from liability in the absence of a contrary contract provision, or a waiver or estoppel.

Furthermore, G.S. 58-176, prescribes the printed form of a policy of fire insurance, the "Standard Fire Insurance Policy of the State of North Carolina." G.S. 58-176(b) provides as follows:

No policy or contract of fire insurance except contracts of automobile fire, theft, comprehensive and collision, marine and inland marine insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in this State, unless it conforms in substance with all of the provisions, stipulations, agreements and conditions, of the policy form in subsection (c) of this section.

Thus, the statutory Standard Fire Insurance Policy is incorporated into every policy of fire insurance issued in North Carolina. *Boyd v. Insurance Co.*, 245 N.C. 503, 96 S.E. 2d 703 (1957); *Glover v. Insurance Co.*, 228 N.C. 195, 45 S.E. 2d 45 (1947).

The Standard Fire Insurance Policy specifically provides that no suit or action on the policy for the recovery of any claim may be maintained unless all the requirements of the policy have been met. G.S. 58-176(c). Therefore, the question here is whether there is a genuine issue of fact as to compliance by plaintiff with *all* of the conditions of the policy. If plaintiff violated any *one* of the conditions, then recovery is barred, and summary judgment for defendant is proper.

One of the policy conditions which plaintiff allegedly violated is the protection maintenance provision. It states:

PROTECTION MAINTENANCE: It is agreed that the whole of the protections provided for the safety of the insured property shall be maintained in good order throughout the currency of this Certificate and shall be in use at all times out of business hours or when the Insured's premises are left unattended, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.

Defendant claims plaintiff failed to maintain in good order the fire protection or sprinkler system at the Star building thus violating this provision. It is not contested that the sprinkler system is one of the fire protections referred to in the provision.

The evidence presented as to this alleged violation may be summarized as follows: The sprinkler system at the Star building was supplied with water from an open pond or cistern located on the premises which was pumped into an elevated 50,000 gallon gravity tank. The tank, in turn, supplied water to the actual sprinkler heads located throughout the building. Philip Olshinski, a fire investigator, stated in his affidavit that as part of his investigation on the day of the fire, he was present when the elevated steel gravity tank that supplied water to the sprinkler system was inspected. According to Olshinski, at the time of the inspection, the outside stem and yoke valve that controlled water flowing into the sprinkler system from the tank was closed, mak-

ing it impossible for water to flow into the sprinkler system. Moreover, when the investigators opened the valve, the steel gravity tank contained no water.

M. T. Channey, who was employed by plaintiff from the time it moved into the Star building until the fire, testified that he was at one time responsible for filling the 50,000 gallon tank with water. Channey said it was necessary to refill the tank often because there was a leak in an underground pipe. The leak was of such size that it allowed all the water to drain from the 50,000 gallon tank in approximately two days, and the leak appeared to be getting larger. Channey pointed out the leak and the need to repair it to Morris Herron and Melvin Peed, who are two of plaintiff's shareholders and part owners of the Star building, who said they would fix it later when they got caught up. Channey estimated that the last time he filled the water tank was about a month or two before the fire.

In addition, defendant presented the affidavit of Charles R. Manning who was hired by defendant to conduct tests on the sprinkler system. Manning conducted a thorough study of the sprinkler system and tested it to determine if it was in operation, or was even operational at the time of the fire. He performed a leak rate test on the sprinkler system which showed that 10 gallons of water per minute were being lost out of the system at 15 pounds per square inch system pressure. Three leaks were located and after extensive excavation, a crack and leak in the main sprinkler line was discovered. After removing a section of the pipe containing the crack and studying it, Manning determined the crack was quite old. Due to the placement of the pipe under approximately four and one-half feet of ground, and the fact the pipe was protected by poured concrete pads, Manning expressed the opinion that the pipe had not been damaged either during or after the fire. Manning stated that at normal system pressure, the cracked pipe would result in the water tower being emptied in three days or less. Finally, based on his study and tests, Manning concluded that "the sprinkler system could not have been, and indeed was not, operable at the time of the fire that occurred on April 2, 1980."

Plaintiff argues that the evidence concerning the maintenance of the sprinkler system is not conclusive and relies upon

the affidavit of its expert, James Samuel McKnight. At plaintiff's request, McKnight observed the tests performed on the sprinkler system by Mr. Manning so as to determine whether the tests were conducted fairly and whether any conclusions reached were supported fully by the test results. In his affidavit, McKnight stated that the bituminous coating on the surface of the pipe at the location of the crack was inadequate to protect the pipe from corrosion, that it appeared corrosion had been occurring for a considerable length of time, and that the crack was old. He said the crack was probably caused by differential settling of the foundations of the boiler house and the warehouse and was accelerated by the inadequate coating on the exterior of the pipe. In his opinion, the water could have leaked out of the storage tank through a crack in the underground pipe.

Mr. McKnight also stated "[t]hat based on my observation of the tests of the water system that were conducted by Mr. Manning and by my own tests . . . , I am of the opinion that no determination could have been made as to whether the sprinkler system was operable or inoperable at the time of the fire. . . ." Thus, Mr. McKnight and Mr. Manning disagree as to whether it could be determined if the sprinkler system was operable. Plaintiff argues this disagreement in itself creates a genuine issue of fact in the case.

We believe that the evidence clearly shows the sprinkler system was not maintained in good order as required by the insurance contract. The evidence conclusively shows that there was a leak or crack in the main sprinkler line which had been there for some time, and which was known to plaintiff or its agents. The crack allowed the water from the storage tank to leak at such a rate that the tank completely emptied in approximately three days. For the sprinkler system to be functional, the water tank needed to be refilled very often, and it does not appear that the tank was so refilled. In fact, the evidence suggests that the last time the tank was filled was one or two months before the fire, that the tank was empty at the time of the fire, and that even if the tank had been full of water the sprinkler system could not have operated because the valve allowing water to enter the system was closed.

The only evidence supporting plaintiff's position is the fact that the parties' experts disagree as to whether it could be deter-

mined if the sprinkler system was operable at the time of the fire. Such a determination is irrelevant, though, because it is clear that even if the system was operable it was still not maintained in good order, and was not properly operated if it was operated at all. We hold plaintiff has failed to produce substantial evidence to show that there is a genuine issue of material fact with regard to its alleged breach of the protection maintenance provision. Since there is no genuine issue as to this fact and a breach of any one of the policy provisions bars recovery under the policy, defendant was entitled to summary judgment in its favor. We uphold the court's judgment on the basis of plaintiff's breach of the protection maintenance provision, we need not discuss the parties' arguments with respect to the other alleged breaches of the policy. The judgment of the court below is

Affirmed.

Judges WHICHARD and EAGLES concur.