JUNIOR WILLIAM BENTLEY, PLAINTIFF v. NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, CORPORATE DEFENDANT, AND MATHESON INSURANCE AGENCY, INC., CORPORATE DEFENDANT, AND W. A. DEAL, INDIVIDUAL DEFENDANT, JOINTLY AND SEVERALLY

No. 9022SC1355

(Filed 21 July 1992)

1. **Insurance § 43 (NCI4th) — bad faith refusal to settle by insurer — insurer insolvent — liability of Guaranty Association**

Under the plain language of N.C.G.S. § 58-48-20(4), punitive damages cannot be recovered from the North Carolina Insurance Guaranty Association where plaintiff had filed a claim against Interstate, its insurer, and others, alleging a bad faith refusal to settle, negligence, and unfair or deceptive trade practices and the Guaranty Association was substituted as the real party in interest for Interstate. Moreover, since the Association is not liable for the torts of insolvent insurers and actions for unfair or deceptive practices sound partly in tort, no action will lie against the Association for an insolvent insurer's violation of the Unfair or Deceptive Trade Practices Act.

**Am Jur 2d, Damages §§ 785 et seq.**

1

Recoverability of punitive damages in action by insured against liability insurer for failure to settle claim against insured. 85 ALR3d 1211.

2. **Insurance § 815 (NCI4th)— fire insurance—appraisal clause—valid—no constitutional violation**

Neither an appraisal clause in a fire insurance policy nor the appraisal process as carried out deprived plaintiff of his property without due process. Every fire insurance policy written in North Carolina must conform to the provisions of the standard fire insurance policy provided by N.C.G.S. § 58-44-15; the North Carolina Supreme Court long ago upheld the validity of a similar appraisal clause; and the United States Supreme Court long ago upheld the constitutionality of a similar appraisal clause. Plaintiff does not show fraud, mistake, duress, or other evidence of wrongdoing in the appraisal process as applied to him.

Am Jur 2d, Insurance §§ 1680 et seq.

Necessity and sufficiency of notice of and hearing in proceedings before appraisers and arbitrators appointed to determine amount of loss. 25 ALR3d 680.

3. **Insurance § 815 (NCI4th)— fire insurance—appraisal clause—no deprivation of trial by jury**

Plaintiff's right to trial by jury was not abridged by an appraisal clause in a fire insurance policy. The North Carolina Supreme Court has repeatedly approved appraisal as a means of settling the single issue of amount of loss sustained by an insured.

Am Jur 2d, Insurance §§ 1680 et seq.

4. **Insurance § 75 (NCI4th)— insurance agent—settlement negotiations—insurer's bad faith refusal to settle—no liability of agent**

The trial court did not err by granting summary judgment in favor of an insurance agency and its employee on a claim of bad faith refusal to settle by the insurer where these defendants were not parties to the settlement negotiations, but the employee made several telephone calls on behalf of plaintiff in an attempt to learn the insurer's intentions and to urge the company to settle with plaintiff quickly. Once an agent

BENTLEY v. N.C. INSURANCE GUARANTY ASSN.

[107 N.C. App. 1 (1992)]

has procured an insurance contract, the agent is not a party to the contract and is not liable under it.

**Am Jur 2d, Insurance §§ 133 et seq., 1399 et seq.**

5. **Insurance § 73 (NCI4th)— fire insurance—recovery limited to actual cash value—negligence—summary judgment for agent proper**

Summary judgment was properly granted for an insurance agent on a negligence claim arising from a disputed fire insurance policy where, regardless of plaintiff's sincere belief as to the value of his property, and notwithstanding the stated face value of the policy, under the entire policy as written plaintiff could not recover more than the actual cash value of the property at the time of the loss. Assuming that plaintiff sustained a loss, under all the circumstances the negligence of defendants Deal and Matheson, if any, could not be the proximate cause.

**Am Jur 2d, Insurance §§ 1500 et seq.**

6. **Insurance § 75 (NCI4th)— fire insurance—recovery limited to actual cash value—fiduciary duty of agent—summary judgment for agent**

Summary judgment was properly entered for an insurance agent on a claim of breach of fiduciary duty arising from a disputed fire insurance policy where there was no evidence of an ongoing relationship between plaintiff and the agency or agent, no evidence that plaintiff requested further advice or sought assurances from defendant Deal about coverage under the policy after purchasing the policy, and no evidence that plaintiff sought to purchase additional insurance from these defendants. Deal explained to plaintiff that recovery under the policy would be based on actual cash value at the time of loss and that the policy was different from another policy of which plaintiff had some knowledge. Even viewed indulgently, plaintiff's evidence did not show any false assurance by defendant Deal as to the extent of coverage.

**Am Jur 2d, Insurance §§ 128, 1500 et seq., 1622.**

7. **Insurance § 75 (NCI4th)— fire insurance—bad faith refusal to settle—unfair or deceptive practice—agent not liable**

The trial court did not err by granting summary judgment for an insurance agent and agency on plaintiff's unfair or decep-

tive practices claim arising from a disputed fire insurance policy where defendants were not responsible for the insurer's bad faith refusal to settle.

**Am Jur 2d, Insurance §§ 1399 et seq.**

APPEAL by plaintiff from order entered 16 August 1990 by *Judge Samuel T. Currin* in ALEXANDER County Superior Court. Heard in the Court of Appeals 26 September 1991.

*Edward Jennings for plaintiff-appellant.*

*Moore & Van Allen, by Joseph W. Eason, Christopher J. Blake, and Margaret A. Nowell, for defendant-appellee North Carolina Insurance Guaranty Association.*

*Yates, McLamb & Weyher, by R. Scott Brown, for defendant-appellee North Carolina Insurance Guaranty Association.*

*Kennedy Covington Lobdell & Hickman, by Wayne P. Huckel and Michelle C. Landers, for defendant-appellees Matheson Insurance Agency, Inc., and W.A. Deal.*

PARKER, Judge.

Plaintiff appeals from summary judgment granted in favor of all defendants. On 2 August 1989 plaintiff filed a complaint against defendants Interstate Casualty Insurance Company, Inc. ("Interstate"), Matheson Insurance Agency, Inc., and W.A. Deal. Alleging fire loss under a dwelling policy, plaintiff's claims included (i) bad faith refusal to settle plaintiff's claim for loss, (ii) negligence and breach of fiduciary duty, and (iii) unfair or deceptive trade practices. Relief prayed for included compensatory damages in the amount of $65,000.00, punitive damages, treble damages, and prejudgment interest. By order of the trial court filed 1 August 1990, defendant North Carolina Insurance Guaranty Association ("the Association") was substituted as the real party in interest for Interstate.

On appeal, plaintiff presents two contentions. He contends granting summary judgment effected an impermissible taking of plaintiff's property under Article I, Section 19, of the North Carolina Constitution and deprived plaintiff of the right to trial by jury under Article I, Section 25. Plaintiff's second contention is that the court erred in granting summary judgment on his claims for

bad faith refusal to settle, negligence and breach of fiduciary duty, and unfair or deceptive trade practices. For reasons which follow, we affirm summary judgment for all defendants.

## I.

[1] Defendant Association did not participate in any of the settlement negotiations at issue. On appeal defendant Association argues that as a matter of law, it cannot be held liable for the torts of an insolvent insurer. This is an issue of first impression requiring interpretation of General Statutes Chapter 58, Article 48. We find defendant's argument persuasive.

The Association was created by the Insurance Guaranty Association Act, N.C.G.S. §§ 58-48-1 through 58-48-100 (1991). According to the Act, "The purpose of [Article 48] is to provide a mechanism for the payment of covered claims under certain insurance policies . . . ." N.C.G.S. § 58-48-5 (1991). The Act provides in addition

> "Covered claim" means an unpaid claim, including one of unearned premiums, which is in excess of fifty dollars ($50.00) and arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Article applies as issued by an insurer, if such insurer becomes an insolvent insurer after the effective date of this Article . . . . "*Covered claim*" *shall not include any amount awarded as punitive or exemplary damages* . . . .

N.C.G.S. § 58-48-20(4) (1991) (emphasis added). The Act provides further

> (a) The Association shall:
>
> (1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency . . . . This obligation includes only the amount of each covered claim that is in excess of fifty dollars ($50.00) and is less than three hundred thousand dollars ($300,000). . . .
>
> (2) Be deemed the insurer to the extent of the Association's obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

N.C.G.S. § 58-48-35 (1991).

Under the plain language of section 58-48-20(4), punitive damages cannot be recovered from the Association. Other jurisdictions have construed similar statutes to exclude claims based on bad faith of the insolvent insurer. The Florida First District Court of Appeal held that the Florida Insurance Guaranty Association ("FIGA") "is not liable for any amounts in excess of policy limits and is not vicariously liable for tortious acts of members' insurers." *Rivera v. Southern Am. Fire Ins. Co.*, 361 So. 2d 193, 194 (1978), *cert. denied*, 368 So. 2d 1372 (1979). The court so held even though the Florida statute did not specifically exclude punitive damages. Fla. Stat. Ann. § 631.57(1)(a)(3) (West 1984). Similarly, the Washington Court of Appeals rejected an argument that the Washington Insurance Guaranty Association "stepped into the shoes of" an insolvent insurer. Quoting statutory language the court said, "A covered claim is an 'unpaid claim . . . *which arises out of and is within the coverage* of an insurance policy to which [the Act] applies.'" The court held that since an action by an insured against his insurer for bad faith in handling a claim or suit sounds in tort, rather than contract, such an action could not constitute a covered claim. *Vaughn v. Vaughn*, 23 Wash. App. 527, 529-30, 597 P.2d 932, 934, *disc. rev. denied*, 92 Wash. 2d 1023 (1979) (not available on Westlaw). Other jurisdictions have also held insurance guaranty associations to be immune from suit arising from their own tortious conduct in settling claims after insolvency of an insurer. *Isaacson v. California Ins. Guar. Ass'n.*, 44 Cal. 3d 775, 750 P.2d 297, 244 Cal. Rptr. 655 (1988) (wherein insolvent's insureds sued California Insurance Guaranty Association for alleged bad faith in settling malpractice claim against insureds); *Florida Ins. Guar. Ass'n. v. Giordano*, 485 So. 2d 453 (1986) (wherein insolvent's insured sued FIGA based on the latter's rejection of settlement offer).

Punitive or exemplary damages may be recovered "in breach of contract actions that 'smack of tort because of the fraud and deceit involved' or those actions 'with substantial tort overtones emanating from the fraud and deceit.'" *Dailey v. Integon Ins. Corp.*, 75 N.C. App. 387, 394, 331 S.E.2d 148, 153 (quoting *Oestreicher v. Stores*, 290 N.C. 118, 136, 225 S.E.2d 797, 809 (1976)), *disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 399 (1985). There must be an identifiable tort and "the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Newton v. Insurance Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976) (citing *Oestreicher*).

North Carolina cases permit recovery of punitive damages for breach of contract only for identifiable torts accompanied by aggravation. The plain language of Article 48 both speaks of contracts and precludes recovery of punitive damages. Finding the reasoning of the Florida and Washington courts to be persuasive, we hold the Association is not subject to vicarious liability for the tortious conduct of insolvent insurers.

"An action for unfair or deceptive acts or practices is 'the creation of . . . statute. It is, therefore, sui generis. It is neither wholly tortious nor wholly contractual in nature.' " *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (quoting *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975)), *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 126 (1984). Given that actions for unfair or deceptive practices sound partly in tort, because we have held the Association is not liable for the torts of insolvent insurers, we hold further that no action will lie against the Association for an insolvent insurer's violation of the Unfair or Deceptive Trade Practices Act.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1990). Since, as a matter of law, defendant Association was not vicariously liable for the torts or unfair practices of Interstate, we hold the trial court did not err in granting summary judgment for defendant Association on these claims.

[2] Plaintiff also contends the granting of summary judgment for the Association violated his rights under the North Carolina Constitution. Plaintiff argues that the inclusion of an appraisal clause in his insurance policy deprived him of his property without due process of law and, alternatively, that the appraisal process as carried out violated his right to due process. Plaintiff also argues the appraisal clause deprived him of the right to a jury trial. Since in following the statutory mandate to pay covered claims, defendant Association could pay claims settled through the appraisal process, we conclude plaintiff may properly raise as against defendant Association claims arising from alleged violations of constitutional rights. Nevertheless, we do not find plaintiff's arguments persuasive.

Every policy of fire insurance written in North Carolina must conform to the provisions of the standard fire insurance policy provided by statute. N.C.G.S. § 58-44-15 (1991). The Standard Policy provides

> **Appraisal**  In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.

N.C.G.S. § 58-44-15 at lines 123-137 (1991). "[T]he statutory Standard Fire Insurance Policy is incorporated into every policy of fire insurance issued in North Carolina." *Star Varifoam Corp. v. Buffalo Reinsurance Co.*, 64 N.C. App. 306, 309, 307 S.E.2d 194, 195 (1983) (citations omitted), *disc. rev. denied*, 310 N.C. 154, 311 S.E.2d 294 (1984). The appraisal clause in plaintiff's policy was essentially the same as that in the statutory standard policy.

The North Carolina Supreme Court long ago upheld the validity of a similar appraisal clause, stating

> It is, we think, well settled that such a provision in a contract of insurance is not against public policy, and that it will be upheld by the courts, in so far as it provides for the submission to arbitration of the amount of loss or damage sustained by the [in]sured.

*Mfg. Co. v. Assurance Co.*, 106 N.C. 28, 46-47, 10 S.E. 1057, 1058 (1890). *See also Green v. Insurance Co.*, 233 N.C. 321, 327, 64 S.E.2d 162, 166 (1951) (holding mortgagee bound by appraisal or arbitration had in good faith between mortgagor and insurance company); *Young v. Insurance Co.*, 207 N.C. 188, 192, 176 S.E. 271, 273 (1934) (stating that award for loss made upon proper procedure under fire in-

surance policy appraisal clause is presumed valid absent evidence of fraud, mistake, duress, or other impeaching circumstance); *Braddy v. Insurance Co.*, 115 N.C. 354, 355, 20 S.E. 477, 477 (1894) (stating, "[I]t is well settled that an agreement in a policy of insurance to submit to arbitrators the single question of the amount of loss by fire sustained by the person insured is not invalid.").

Turning to the more narrow question of whether the appraisal clause violated plaintiff's right to due process of law, the North Carolina Constitution provides, "No person shall be . . . in any manner deprived of his . . . property, but by the law of the land. No person shall be denied the equal protection of the laws . . . ." N.C. Const. art. I, § 19. "Law of the land" is synonymous with "due process of law" under the Fourteenth Amendment; and United States Supreme Court interpretations of the latter, though not binding, are highly persuasive in construing the former. *Watch Co. v. Brand Distributors and Watch Co. v. Motor Market*, 285 N.C. 467, 474, 206 S.E.2d 141, 146 (1974). The United States Supreme Court long ago upheld the constitutionality of a similar appraisal clause, stating

> [T]he arbitration clause has long been voluntarily inserted by insurers in fire policies, and . . . in the appraisal of the loss by arbitration, expert knowledge and prompt inspection of the damaged property may be availed of to an extent not ordinarily possible in the course of the more deliberate processes of a judicial proceeding. . . . Hence the requirement that disputes of this type arising under this special class of insurance contracts be submitted to arbitrators cannot be deemed to be a denial of either due process or equal protection of the laws.
>
> . . . [T]he requirements of the 14th Amendment . . . are satisfied if the substitute remedy is substantial and efficient. We cannot say that the determination by arbitrators, chosen as provided by the present statute, of the single issue of the amount of loss under a fire insurance policy, reserving all other issues for trial in court, does not afford such a remedy, or that in this respect it falls short of due process . . . .

*Hardware Dealers Mut. Fire Ins. Co. of Wisconsin v. Glidden Co.*, 284 U.S. 151, 159-60, 76 L. Ed. 214, 219-20 (1931). Since the appraisal clause in the case under review is similar to that in *Hardware Dealers*, we find the reasoning of that case persuasive. We hold

the clause did not deprive plaintiff of his right to due process under the North Carolina Constitution.

Plaintiff also contends the appraisal process as applied deprived him of the right to due process. He argues the appointment of the umpire was arbitrary and plaintiff did not receive a copy of the appraisal report until the day defendant Association filed its motion for summary judgment.

The validity of the appointment of an umpire by a judge may be adjudicated when the question is raised in a properly instituted civil action. *In re Roberts Co.*, 258 N.C. 184, 128 S.E.2d 137 (1962). Plaintiff, however, attempts to challenge validity of the appointment of the umpire by plaintiff's and Interstate's designated appraisers. The affidavit of plaintiff's appraiser, Billy Lynn Millsaps, indicates Millsaps agreed to the appointment of Paul W. Gadd as umpire. The affidavit of Larry G. Austin, Interstate's appraiser, shows he also agreed to the appointment of Gadd. According to Gadd's affidavit, on 24 February 1990, he and Millsaps agreed on an award of $33,000.00. Defendant Association's motion for summary judgment was not filed until 31 July 1990. Before this Court plaintiff does not show fraud, mistake, duress, or other evidence of wrongdoing in the appraisal process as applied to him. We conclude that under all the circumstances, plaintiff cannot challenge the validity of appointment of Gadd or timing of the report.

**[3]**  We next consider whether plaintiff was deprived of his right to trial by jury. "In all controversies at law respecting property . . . trial by jury . . . shall remain sacred and inviolable." N.C. Const. art. I, § 25. Notwithstanding this provision, the North Carolina Supreme Court has repeatedly approved appraisal as a means of settling the single issue of amount of loss sustained by an insured. *E.g., Green v. Insurance Co.*, 233 N.C. 321, 64 S.E.2d 162 (1951). In general, there exists in North Carolina "a strong public policy favoring the settlement of disputes by arbitration." *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986). *Accord Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Addressing the constitutionality of a mandatory binding arbitration clause in an automobile insurance policy, the Supreme Court of Delaware recently stated

> In arguing against enforcement of the arbitration clause, [plaintiffs] attempt to appeal to "the old judicial hostility to arbitration." . . . Over time . . . the judicial view of arbitration

has evolved from hostility to eager acceptance. In part, this change has been fostered by a recognition of the efficiency and specialized expertise available in an arbitral forum. . . .

. . . In short, the public policy of this state favors the resolution of disputes through arbitration.

*Graham v. State Farm Mut. Automobile Ins. Co.*, 565 A.2d 908, 910-11 (1989) (quoting *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 985 (2d Cir. 1942)) (citations omitted). These words recall the United States Supreme Court's statement in *Hardware Dealers* that expert knowledge and prompt inspection of damaged property are not as readily available in the judicial forum. We find the reasoning of the Delaware court persuasive, and in light of the numerous North Carolina cases approving appraisal as a means of settling the single issue of amount of loss and strong policy favoring arbitration, we hold plaintiff's right under the North Carolina Constitution to trial by jury was not abridged by the appraisal clause.

For all the foregoing reasons, we conclude summary judgment was properly granted in favor of defendant Association.

## II.

[4] We next consider whether the trial court erred in granting summary judgment in favor of defendants Matheson and Deal. The pleadings, depositions, exhibits, and affidavits before the trial court showed these defendants were not parties to the settlement negotiations between plaintiff and Interstate. Nevertheless, defendant Deal, as the employee of defendant Matheson, made several telephone calls on behalf of plaintiff in an attempt to find out what Interstate intended to do and to urge the company to settle quickly with plaintiff. Defendant Matheson's only involvement was through the acts of defendant Deal.

Plaintiff contends the court erred in granting summary judgment on his claim for bad faith refusal to settle plaintiff's claim under the policy. We disagree with this contention.

The North Carolina Supreme Court has held that once an agent has procured an insurance contract, the agent is not a party to the contract and is not liable under it "irrespective of any default in the performance thereof by the insurer and irrespective of the insured's lack of success in an action against such defaulting in-

surer." *Mayo v. Casualty Co.*, 282 N.C. 346, 354, 192 S.E.2d 828, 833 (1972). We conclude that defendants Matheson and Deal could not be held liable for any bad faith refusal to settle by Interstate.

[5]  Plaintiff's next contention is that the court erred in granting summary judgment on his claim for negligence. Again we disagree.

"If an insurance agent . . . undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so." *Id.* at 353, 192 S.E.2d at 833. It follows that if defendants Matheson's and Deal's alleged negligence was not the proximate cause of plaintiff's loss, summary judgment could properly have been granted for these defendants. *See Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (stating movant meets burden of establishing lack of triable issue by proving essential element of opposing party's claim is nonexistent or showing through discovery that *opposing party cannot produce evidence to support an essential element of its claim*).

Plaintiff's argument is that on account of defendants' negligence he was unable to recover the value of his property. However, regardless of plaintiff's sincere belief as to the value of his property, and notwithstanding the stated face value of the policy, under the entire policy as written, plaintiff could not recover more than the actual cash value of the property at the time of loss.

North Carolina insurance law provides

No insurance . . . agent shall knowingly issue any fire insurance policy . . . for an amount which, together with any existing insurance thereon, exceeds the fair value of the property . . . : Provided, any fire insurance company authorized to transact business in this State may, by appropriate riders or endorsements or otherwise, provide insurance indemnifying the insured for the difference between the actual value of the insured property at the time any loss or damage occurs, and the amount actually expended to repair, rebuild or replace . . . property . . . destroyed by fire . . . .

N.C.G.S. § 58-43-5 (1991). The North Carolina Rate Bureau is charged with promulgating rates for insurance against loss, including fire loss, to residential real property with not more than four housing

units located in North Carolina. N.C.G.S. § 58-36-1 (1991). The Bureau must maintain reasonable records of the policy or bond forms made or used by it. N.C.G.S. § 58-36-15(c) (1991). No policy form applying to insurance on risks covered by General Statutes Chapter 58, Article 36, including risk of loss by fire, may be issued for delivery unless filed by the Bureau with the Commissioner of Insurance and approved explicitly or through default as provided by statute. N.C.G.S. § 58-36-55 (1991).

The Rate Bureau's basic form dwelling policy, Form DP-1, includes the following loss settlement provision: "5. Loss Settlement. Covered property losses are settled at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace the damaged property." A separate approved form, DP 00 62, entitled "Replacement Cost," begins with the following language, "For the premium charged for this policy, Policy Condition 5—Loss Settlement is amended to read as follows." Plaintiff's policy was a basic form dwelling policy; nothing of record shows the policy included an approved replacement cost rider or endorsement form.

Defendant Deal testified that regardless of what values he might have stated on the application for insurance, actual cash value at the time of loss, as determined by the appraisal process, would control the insured's recovery. Asked whether he explained actual cash value to plaintiff, Deal testified, "Well, you know, I don't know whether I ever made him understand that or not. I said, 'It is not like a policy like Steve [plaintiff's nephew] has . . . where we replace the house. It's based on what the actual cash value is at the time of loss.'" Deal testified further, "I think I basically told him down here in the office when we were trying to explain [it] to him. I said, 'Junior, you can basically insure this thing for anything you want to, but it is still only going to be worth so much at the time of loss under this policy.'"

Affidavits before the trial court showed that plaintiff's and Interstate's appraisers were unable to agree on an appraisal value of the fire loss. Plaintiff's appraiser, Millsaps, and umpire Gadd subsequently agreed on an award of $33,000.00 for the actual cash value of plaintiff's loss. Assuming arguendo that plaintiff sustained a loss, we conclude that under all the circumstances, negligence, if any, of defendants Deal and Matheson could not be the proximate cause thereof.

BENTLEY v. N.C. INSURANCE GUARANTY ASSN.

[107 N.C. App. 1 (1992)]

**[6]**  Plaintiff also contends the trial court erred in granting summary judgment on plaintiff's claim for breach of fiduciary duty. Again we disagree.

"[T]here is a fiduciary duty on the part of the insurance agent to keep the insured correctly informed as to his insurance coverage." *R-Anell Homes v. Alexander & Alexander*, 62 N.C. App. 653, 659, 303 S.E.2d 573, 577 (1983). The duty arises where plaintiff shows a continuing relationship between agent and insured and a request for advice on some change or contemplated change in the insured's circumstances. In such a situation, the giving of false assurances concerning the extent of insurance coverage may constitute breach of fiduciary duty. *Id.* at 657-59, 303 S.E.2d at 576-77.

In the instant case, no evidence showed an ongoing relationship between plaintiff and defendant Matheson or Deal. No evidence showed that after purchasing the fire loss policy, plaintiff requested further advice or sought assurances from defendant Deal about coverage under the policy. There was no evidence that plaintiff sought to purchase additional insurance from these defendants.

Furthermore, this Court has stated,

It is clearly not the duty of an insurer or its agent to inquire and inform an insured as to all parts of his policy:

We cannot approve the position that in the absence of a request it was the agent's legal duty to explain the meaning and effect of all the provisions in the policy, or that his failure to inquire . . . was a waiver of the requirement . . . . *Hardin v. Ins. Co.*, 189 N.C. 423, 427, 127 S.E. 353, 355 (1925).

*Greenway v. Insurance Co.*, 35 N.C. App. 308, 314, 241 S.E.2d 339, 343 (1978).

Defendants' evidence showed defendant Deal explained to plaintiff that recovery under the policy would be based on actual cash value at time of loss and that the policy was different from another policy of which plaintiff had some knowledge. Under these circumstances, plaintiff had the burden of forecasting evidence of negligent false assurances by Deal as to the extent of insurance coverage. Plaintiff's evidence was that defendant Deal told plaintiff his house was covered for $65,000.00. Since, in the event of loss, plaintiff could not recover more than actual cash value, even viewed

indulgently, plaintiff's evidence did not show any false assurance by defendant Deal as to the extent of coverage. We conclude plaintiff failed to meet the burden of showing defendant Deal made negligent false assurances as to the extent of coverage.

[7] Finally plaintiff contends the trial court erred in granting summary judgment for defendants on plaintiff's unfair or deceptive trade practices claim. Again we disagree.

"Unfair or deceptive trade practices in the insurance industry are governed by N.C.G.S. § 58-54.4 [now § 58-63-15]." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 468, 343 S.E.2d 174, 179 (1986). A violation of this statute "as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1." *Id.* at 470, 343 S.E.2d at 179. Prohibited practices include "[c]ommitting or performing with such frequency as to indicate a general business practice any of the following: . . . Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.C.G.S. § 58-63-15(11)f (1991).

From our conclusion that defendants Matheson and Deal are not liable for the insurer's bad faith refusal to settle plaintiff's claim it follows that these defendants have no liability for the same conduct by the insurer if constituting unfair or deceptive practices under sections 58-63-15(11)f and 75-1.1. We note also that under the predecessor of section 58-63-15(11), the appellate courts repeatedly emphasized the necessity of allegations of engaging in prohibited acts with frequency so as to indicate a general business practice. *E.g.*, *Beasley v. National Savings Life Ins. Co.*, 75 N.C. App. 104, 109, 330 S.E.2d 207, 210 (1985), *disc. rev. improvidently allowed*, 316 N.C. 372, 341 S.E.2d 338 (1986).

For all the foregoing reasons we hold the trial court did not err in granting summary judgment for defendants Matheson and Deal.

Affirmed.

Judges WELLS and WYNN concur.