W. C. WILCOX v. G. McLEOD ET AL.

(Filed 14 December, 1921.)

**1. Deeds and Conveyances—Contracts—Timber—Extension Period—Condition.**

Where a deed to standing timber grants a further extension of time for cutting and removing the timber in case of death or fire, neither the grantee nor his assigns can claim any right under the extension clause without showing that a delay in cutting and removing the timber has been caused under the conditions stated in the deed.

**2. Statute of Frauds—Deeds and Conveyances—Timber.**

A contract for the sale of timber standing upon the lands concerns such an interest therein as is required by the statute of frauds to be in writing.

**3. Deeds and Conveyances — Contracts — Timber— Assignments—Parol Contract—Powers—Revocation.**

Where the vendee under a deed to standing timber has assigned his rights thereunder by a parol agreement, his assignee, at most, can only cut and remove the timber from the owner's land until stopped by his assignor, the grantee in the deed; and where he has done so within the life of the original contract, and after his death, his right under his deed has expired, his assignee cannot claim any extension right under the original contract to continue to cut and remove the timber that is conditioned upon the death of his grantor, the grantee in the original deed, or any one else.

**4. Same—Executors and Administrators—Wills—Heirs at Law—Powers of Attorney.**

The executor cannot exercise a power for the sale of lands not conferred by the will, except for the payment of debts in accordance with the method prescribed by law; and a power of attorney executed by the devisees respecting other lands than the *locus in quo* cannot have the effect of restoring a right to cut and remove timber from it which had expired in the lifetime of their ancestor.

ADAMS, J., not sitting.

APPEAL by plaintiff from *Ray, J.,* at the May Term, 1921, of MOORE.

On 15 January, 1906, defendants McLeod and wife conveyed by deed to one M. K. Gray the timber on a tract of land in Moore County, giving Gray three years in which to cut and remove the same, with a modification of the time in these words: "Unless he or they should be providentially hindered in the cutting, manufacturing, and removing the same by reason of death, or fire, and then, in that event, he or they are to have the period of five years from the date of this indenture and agreement to cut, manufacture, and remove the same.

The plaintiff Wilcox claims to be the assignee of Gray, or of his heirs, and alleges that he was providentially hindered by death from cutting and removing the timber within the three years, and that consequently

he had five years to cut and remove the same, under the exception in the contract, and asks for a recovery of the timber and damages.

Plaintiff submitted to a nonsuit in deference to an intimation of the court as to his right of recovery, and appealed.

*H. F. Seawell for plaintiff.*
*U. L. Spence for defendants.*

WALKER, J., after stating the case: The plaintiff says that he was hindered by two deaths, first, that of M. K. Gray, and second, that of James Baxter, plaintiff's sawyer.

It is clear that no recovery can be had simply because either Gray or Baxter, or any one else, died, but it must appear that Gray has been, or perhaps his heirs or assigns have been, providentially hindered by death. There is no special statement in the complaint of any facts constituting a cause of action on account of any hindrance by death, but only the general allegation that the work of cutting and removing the timber were hindered by the death of Gray and Baxter. Defendants, therefore, claim that the action should have been dismissed in the beginning, and that the court committed no error in its subsequent rulings. And that but for the nonsuit voluntarily taken the Court should dismiss the action here *ex mero motu,* citing *Moore v. Hobbs,* 79 N. C., 535; *Garrison v. Williams,* 150 N. C., 674. It is further contended by the defendants that there is no evidence in the record to show that either Gray was, or his heirs were, hindered in the least from removing the timber within the three years, either by the death of Gray or any other death, the sole testimony offered with respect to any hindrance being that of the plaintiff Wilcox. We need not consider this claim of the defendants, because, as will appear later on, we are of the opinion that the plaintiff acquired, if anything, only a precarious right of possession, which could be determined at any time by M. K. Gray, by himself or his duly authorized agent acting in his behalf, the plaintiff W. C. Wilcox having only the oral permission, or contract, if it may be so called, to enter upon the land and to cut and remove the timber thereon. But more of this hereinafter.

Was Wilcox hindered by Gray's death? He himself says that he was not so hindered, but that Hodgin, the agent of Gray, who put him in possession of the timber, stopped him from cutting under some sort of an oral contract, and this was before the death of Gray; and that he was not hindered from cutting and removing the timber by any of Gray's heirs, or his executor, after the death of Gray. There is no evidence that Gray's heirs, or executors, or devisees, were hindered by Gray's

death. Indeed, the evidence shows that the plaintiff did not even have the pretense of a legal title, which he claims, until after the death of Gray, and until after the three years had expired, and nothing except the oral contract of purchase with Hodgin, the agent of Gray. M. K. Gray, through Hodgin, his agent, stopped the work of plaintiff, as he had the right to do (the contract not being in writing). This, of course, was done in the lifetime of M. K. Gray, the owner of the land, and put an end to all rights of plaintiff in the timber, according to his own showing, until after the death of Gray.

That the death of James Baxter, the sawyer of plaintiff, while plaintiff was cutting this timber, under the oral contract with Hodgin or his oral permission, during the life of Gray, can be construed as one of the hindrances within the reasonable contemplation of the parties, under the terms of the contract, can hardly be made the subject of serious contention. If neither Gray was, nor his heirs were, providentially hindered from cutting and removing the timber within the three years by death, how can the plaintiff, whose record title, on which he must depend, which is dated after the expiration of the three years, claim any rights which are superior to those of defendants? In fact, the plaintiff, as will appear, has shown no title to the timber.

1. It is further contended by the defendants that the will of M. K. Gray is not probated according to law, as the subscribing witnesses do not testify that Gray was of sound mind and disposing memory, except by the inference that the testator is the one referred to, and they do not testify that they signed as witnesses in the presence of each other, but laying this suggestion out of the case, we proceed to consider the remaining questions.

2. The will does not confer authority on the executor to sell this timber, if the ownership of the timber can be determined until after the death of the widow, and the power of attorney to the executor from the alleged heirs at law of Gray (which only purports to authorize a sale of Guilford County property) is without effective validity.

3. The deed of the timber to plaintiff is void, and conveys nothing. It purports to be a deed from the heirs at law of M. K. Gray, without naming any of them, and none of the heirs at law executes it; it is signed by R. W. Gray, in his capacity as the executor of M. K. Gray, deceased, and it does not even purport to be his individual deed. It is most truly a "scrap of paper," say the defendants. *Gray v. Mathis,* 52 N. C., 502; *King v. Rhew,* 108 N. C., 696; 13 Cyc., 540 (cited by defendants' counsel), to which we add *Lefflin v. Curtis,* 13 Mass., 233; *Gatlin v. Weare,* 9 *ib.,* 217; Cruise's Digest of Real Property, 260, note 2; and see, also, *Kearns v. Peeler,* 49 N. C. (4 Jones Law), 226.

The case is simply this, that the original right to cut the timber on and remove the same from the land, which was given to M. K. Gray by the defendants, contained the provision as to cutting and removing within three years, or within five years if providentially hindered by death, there having been no fire to impede or prolong the cutting and removal of the timber. The right to cut was then passed to the plaintiff W. C. Willcox, by oral agreement between him and John A. Hodgin, agent of M. K. Gray for the purpose, and M. K. Gray, by his said agent, subsequently revoked this permission, or license, to cut and remove the timber, which he clearly had the right to do, it not being evidenced by any memorandum in writing, as required by the statute of frauds. The right acquired under the oral transaction, even if it amounted to a valid license for the time being, or until withdrawn by some act of the owner, is necessarily revocable, and, when revoked, left the plaintiff without any right of recovery against the defendants. 20 Cyc., 212, says that it is generally held that trees and growing grass are so far realty that title to them will not pass without writing, but that crops raised by yearly labor are chattels and will pass by parol. See, also, pages 215 (4), 216, 217, and 218. We find the following in Reed on the Statute of Frauds (a very excellent treatise on that important subject, sec. 685, which is, that "An oral invalid contract anywhere in the line of title vitiates the latter; and in an action brought to recover a chattel, if the evidence introduced by the plaintiff to establish his title showed that the title depended upon a verbal contract within the statute of frauds, the courts ought to instruct the jury to disregard such evidence. If a writing is necessary to pass the right to the thing in demand, etc., a submission and award must be in writing. That a defendant has conveyed to a *bona fide* purchaser without notice does not avail, as he had no title to convey." We have held that an agreement for the cutting upon and removal of trees from land passes the title to the trees *sub modo,* and is within the statute of frauds. *Bunch v. Lumber Co.,* 134 N. C., 116; *Hawkins v. Lumber Co.,* 139 N. C., 162, 165; *Lumber Co. v. Corey,* 140 N. C., 462, and other cases cited in the annotated edition of 134 N. C., at p. 124, and *Moring v. Ward,* 50 N. C., 272. The oral agreement between M. K. Gray (acting through his agent, Hodgins) and the plaintiff purported to pass an interest in land, the trees being regarded as a part thereof, was void under our statute of frauds, and plaintiff acquired no interest therein, and certainly none, except at the will of M. K. Gray, which he exercised against a further continuance of the right to cut and remove the timber. His right, if any existed, was thus terminated.

This being so, he now claims that it was restored by the power of attorney of M. K. Gray's heirs to R. W. Gray, his executor. But the

power, at most, applied only to the lands in the county of Guilford, and the lands in controversy lie in the county of Moore, so that plaintiff cannot improve his position by a reliance upon the power. Besides, the power, even as to the Guilford lands, was never exercised, as no valid deed was ever made by the executor as to those lands, for under the power the instrument claimed to be the executor's deed describes only the lands in Moore County; the timber on which was conveyed by the defendants to M. K. Gray. It would seem to be useless to further consider the question as to whether that deed was properly framed and executed by the executor. There is no reference in it to the power, the names of the heirs were never inserted in it, and while it contains a blank presumably for their names, it is still there, and it thus appears in the deed: "............................., heirs at law of M. K. Gray," and signed by "R. W. Gray, as executor of M. K. Gray, deceased (seal)," though that name and title nowhere appears in the body of the deed. See cases *supra* on this point, and *Bateman v. Lumber Co.,* 154 N. C., 248. But even if the deed were properly drawn and executed, and sufficient in form to pass the title, the executor had no power under the will to convey the Moore County lands, until other designated lands had been first sold, and then only to pay his testator's debts, and he had no right to make the deed under the power, as it did not embrace these lands, and only described the lands in Guilford, nor did he profess, as executor, to be acting either under the power contained in the letter of attorney or under any power to be found in the will. The plaintiff, therefore, so far as this paper-writing is concerned, is hedged in by many, if not insurmountable, difficulties.

Upon a careful review of the entire case, as shown even by the plaintiff himself, the intimation of the judge was correct.

If by any chance the court committed technical error in the exclusion of any evidence offered, the whole case shows that the plaintiff can in no event recover, and the voluntary nonsuit was properly taken by the plaintiff, and leaves him out of court. *Bateman v. Lumber Co.,* 154 N. C., at p. 249, fifth headnote.

The ruling of the court is free from reversible error.

Affirmed.

ADAMS, J., did not sit.