JAMES E. GREENWAY AND WIFE, ALICE F. GREENWAY v. NORTH CARO-
LINA FARM BUREAU MUTUAL INSURANCE COMPANY AND WILLIAM
A. PLEASANT

No. 7717SC135

(Filed 21 February 1978)

1. **Insurance § 113— limiting provision—no restriction of standard policy allowed**

   An insurer may insure only such properties as are situated outside the
   limits set out in a limiting provision, which provision is descriptive, not restric-
   tive of the standard coverage, and what an insurer may not do is promise
   general coverage, receive appropriate premium payment and then restrict
   coverage by a restrictively limiting provision.

2. **Insurance § 122— fire insurance—limiting endorsement—installation of
   telephone—reasonableness of endorsement**

   In an action to recover the balance allegedly due under a fire insurance
   policy where defendant paid plaintiffs only 75% of the agreed value of their
   house which had been destroyed by fire because plaintiffs had not installed a
   telephone as required for 100% coverage by an "Unprotected Dwelling En-
   dorsement A," which was attached to plaintiffs' policy, the endorsement provi-
   sion was reasonable because tied to an increased risk and was in nowise
   restrictive of anything in the standard policy in violation of G.S. 58-177(3) but
   was descriptive of the coverage contemplated in and charged for by the stand-
   ard policy.

3. **Insurance § 128— fire insurance—limiting endorsement—no waiver by insurer**

   In an action to recover the balance allegedly due under a fire insurance
   policy which contained "Unprotected Dwelling Endorsement A," providing for
   reduction of coverage by 25% if there were not a telephone upon the
   premises, plaintiffs' argument that the endorsement provision was waived
   because defendant insurer, via defendant agent, knew the dwelling was under
   construction and without a telephone but still insured it and accepted premium
   payments is without merit, since the dwelling was completed well before the
   fire and the provision, which clearly contemplated the completed dwelling, was
   not waived.

4. **Insurance § 3— failure to sign endorsement—endorsement valid**

   The fact that an endorsement in a fire insurance policy which limited
   coverage to 75% of the value of the dwelling if there were no telephone on the

Greenway v. Insurance Co.

premises was not signed did not invalidate it, since the signature requirement of G.S. 58-177(3) comes into play only after the standard policy has been accepted, and the limiting endorsement was an integral part of the original policy and was clearly referred to on its face.

**5. Unfair Competition— fire insurance policy—no misrepresentation—no neglect of duty by insurer or agent—no unfair trade practice**

Because the endorsement in a fire insurance policy made no misrepresentation and because neither defendant agent nor defendant insurer violated any duty owed plaintiffs, neither defendant could possibly be guilty of any unfair practice pursuant to G.S. 75-1.1 because of the endorsement, if, *arguendo*, such statute contemplated regulating the insurance industry at all.

**6. Rules of Civil Procedure § 56— summary judgment—no timely motion—summary judgment proper**

Plaintiff's contention that the trial court improperly granted summary judgment for defendant insurer, even though no motion was made by defendant insurer until the day of the hearing on plaintiffs' and defendant agent's motions for summary judgment, is without merit, since summary judgment may be rendered against the moving party when appropriate, and it was therefore immaterial that defendant insurer's motion was not made within the time limit.

PLAINTIFFS appeal from *Walker (Hal H.), Judge*. Orders filed 2 December 1976 and 22 December 1976, in Superior Court, CASWELL County. Heard in the Court of Appeals 6 December 1977.

Plaintiffs began action against defendant Insurance Company to recover the balance allegedly due under a fire insurance policy, $18,000 building and $9,000 contents coverage. Defendant-insurer had insured plaintiffs' house against loss by fire; the house had burned on 9 February 1975; and defendant had paid only 75% of the agreed value because plaintiffs had not installed a telephone as required for 100% coverage by an "Unprotected Dwelling Endorsement A," which was attached to plaintiffs' policy, and which plaintiffs alleged was wrongfully included in their policy. Plaintiffs filed an amended complaint on 10 May 1976, joining William Pleasant, defendant-insurer's agent, as codefendant, alleging negligence on the part of both defendants, and also seeking treble damages pursuant to G.S. 75-16 because of defendant-insurer's unfair and deceptive trade practice in forcing the limiting endorsement upon the plaintiffs without their consent or understanding by material misrepresentation. Defendants answered, denied negligence and misrepresentation, and asserted contributory

negligence on the part of plaintiffs for admitted failure to read their policy. Extensive discovery followed. Plaintiffs timely moved for summary judgment against defendant-insurer and for certain interrogatories compelling defendant-agent to answer. Defendant-agent timely moved for summary judgment against plaintiffs. Defendant-insurer moved the day of the summary judgment hearing for summary judgment against plaintiffs.

Plaintiffs' pleadings and affidavits tended to show that they had acquired land in August 1974 on which to build a home. The construction was to be financed through FHA which would pay out the loan monies only upon the premises being insured. Plaintiff-husband applied for fire insurance, through defendant-agent, with defendant-insurer in September 1974. The application indicated that the dwelling to be insured was under construction. Plaintiff claimed that he was never informed of the telephone requirement for full coverage and never discussed rates but that defendant-agent told him he would have full coverage. The application he signed made no mention of the telephone requirement. Plaintiffs received their policy in October but never read it. Plaintiff-husband admitted that his copy contained a slip of paper entitled "Unprotected Dwelling Endorsement A" and that the face of the policy contained the specific endorsement code number. Defendant-agent came to the house at least twice while it was under construction and never mentioned anything about a telephone. Plaintiffs were away on 9 February 1975 when their house burned down and defendants refused to pay more than 75% of the policy limit.

Defendants' pleadings and affidavits tended to show that plaintiffs were informed of the telephone requirement when they initially applied for the insurance because it was one of the factors involved in classifying the house and computing the premiums. Defendant-insurer was not ordinarily willing to insure 100% of loss of a rural, "unprotected" dwelling, situated far from a fire department, but it would do so if certain conditions were met, including the maintenance of a telephone. These conditions were spelled out in the "Unprotected Dwelling Endorsement A" and the code number of the endorsement appeared clearly on the policy face as did the classification "10A" designating the dwelling as an "Unprotected Dwelling." Plaintiffs got a lower premium for total coverage as a result of accepting the conditions of the

special endorsement and supposedly meeting them. Defendant-insurer insured buildings under construction which could not meet all the conditions if insured accepted the condition and fulfilled them when the building was completed. Defendant-agent claimed that defendant-insurer did not require him to inquire, after issuance of insurance, whether insured is meeting accepted conditions, and that the duty is rather on the insured to notify insurer if he can or will not meet the conditions.

After consideration of all the pleadings and affidavits, the trial court denied both of plaintiffs' motions, granted defendant-agent's and defendant-insurer's motions, preserving plaintiffs' claim for additional living expenses. From these orders plaintiffs appeal.

*Ramsey, Hubbard & Galloway by Mark Galloway for plaintiff appellants.*

*Henson & Donahue by Perry C. Henson and Ronald G. Baker for defendant appellee, North Carolina Farm Bureau Mutual Insurance Company.*

*Jordan, Wright, Nichols, Caffrey & Hill by R. Thompson Wright for defendant appellee, William A. Pleasant.*

CLARK, Judge.

The first issue raised by this appeal is whether "Unprotected Dwelling Endorsement A," providing for reduction of coverage by 25% if there were not a telephone upon the premises, was unenforceable. Plaintiffs first attack endorsement "A" on the ground that it is *restrictive* of the coverage provided in the standard fire insurance policy (G.S. 58-176), and therefore violates G.S. 58-177(3), which provides in pertinent part:

"A company may write or print upon the margin or across the face of a policy, in unused spaces or upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form, *and all such slips, riders, and provisions must be signed* by an officer or agent of the company so using them. *Provided, however, such provisions shall not have the effect of making the provisions of the standard policy form more restrictive . . . ."* [Emphasis added.]

Greenway v. Insurance Co.

[1]  There is no statutory definition of "restrictive." The word, construed in light of the statutory object and not in a narrow or technical sense, was intended to cover any clause or provision included in or appended to the standard fire policy whereby an essential provision of the standard fire policy, materially influencing the rights of the insured, is limited or modified. *Glover v. Insurance Co.*, 228 N.C. 195, 45 S.E. 2d 45 (1947), held a provision in a fire insurance policy restrictive of the standard policy provisions. The standard policy insured for all direct loss by fire. The provision excluded coverage for loss by a fire originating on a neighbor's property whenever the insured's property was within a specified distance of the neighbor's combustible property. The provision thus restricted coverage to compensation for certain kinds of fire while the standard policy provided coverage for loss by all fires. The premium assessment was most certainly based on the general coverage of the standard policy provisions. The *Glover* court made the distinction between the limiting provision, which was truly restrictive in character, and one that is "descriptive of the sole risk classification" underwritten by the insurer. 228 N.C. at 198, 45 S.E. 2d at 47. It is clear that an insurer may insure only such properties as are situated outside the limits set out in a limiting provision, which provision is descriptive, not restrictive, of the standard coverage. What an insurer may not do is promise general coverage, receive appropriate premium payment and then restrict coverage by a restrictively limiting provision.

[2]  It is clear, from an examination of the face of the standard policy and of the "Unprotected Dwelling Endorsement A" at issue in the case *sub judice,* that the endorsement is descriptive of the coverage agreed to and paid for under the standard policy provisions rather than restrictive. Both the application and the standard policy classify the dwelling to be insured as "10A," unprotected and rural, and both indicate the charge of a discounted premium. The standard policy clearly indicates the "Unprotected Dwelling Endorsement" Code Number, "257-4(11-70)," on its face. The classification 10A determined the house to be "unprotected," an insured-risk rural dwelling far from a fire department. The acceptance of the endorsement's conditions for 100% coverage gave plaintiffs the discounted premium. The plaintiffs are clearly wrong in their collateral contention that the endorse-

ment was invalid because there was no increased risk involved. The insurer's risks in insuring a dwelling in a rural area far removed from a fire station are obviously greater than of insuring a dwelling close to a station; the risks of insuring a remote dwelling without telephone communication are obviously greater than of insuring such a dwelling with adequate, immediate communication. Therefore, we hold that the endorsement provision was reasonable because tied to increased risk, and in nowise restrictive of anything in the standard policy, which nowhere promises 100% compensation. The provision is descriptive of the coverage contemplated in and charged for by the standard policy.

[3, 4] Plaintiffs' argument that the endorsement provision was waived because defendant-insurer, via defendant-agent, knew the dwelling was under construction and without a telephone but still insured it and accepted premium payments is without merit. It is not necessary to decide whether the endorsement provision would have applied to limit coverage had the dwelling burned down before construction was completed and a telephone could be installed. In the case *sub judice* the dwelling was completed well before the fire and the provision, which clearly contemplated the completed dwelling, was not waived. The fact that the endorsement was not signed does not invalidate it. The statute cited earlier does require signature, but this requirement seems to come into play only *after* the standard policy has been accepted. The common law rule of "incorporation by reference" is sufficient. 43 Am. Jur. 2d, Insurance, § 284, p. 346. Statutes such as we have in North Carolina are not designed to abrogate common law rules in general but to soften such rules as affect misrepresentation or warranty, to modify the doctrine of *caveat emptor* to suit modern concepts of commercial fairness. 43 Am. Jur. 2d, Insurance, § 757, p. 740. They also protect against a company sneaking limitations in *after* acceptance. But they do not completely shift the burdens of responsibility off the buyer and onto the seller of insurance. No statute has abrogated the common-law burden placed on the buyer of insurance to read his policy. 43 Am. Jur. 2d, § 754, p. 738. In the case *sub judice* the limiting endorsement was an integral part of the original policy and was clearly referred to on its face. The fact that plaintiff did not read his policy did not excuse him from its provisions.

[5]    There is conflicting testimony as to whether plaintiffs knew of the telephone requirement. This conflict, however, does not raise a material issue of fact. It is clearly not the duty of an insurer or its agent to inquire and inform an insured as to all parts of his policy:

> "We cannot approve the position that in the absence of a request it was the agent's legal duty to explain the meaning and effect of all the provisions in the policy, or that his failure to inquire . . . was a waiver of the requirement . . . ." *Hardin v. Ins. Co.*, 189 N.C. 423, 427, 127 S.E. 353, 355 (1925).

Plaintiffs in this case made no requests for explanation; they agreed to the 10A classification, paid the premiums and admitted they knew the endorsement slip was physically part of the policy they accepted. No duty arose such that the defendant-agent, and, by imputation, the defendant-insurer, might be negligent for violating it. Plaintiffs' admitted failure to read the policy, is, as noted, no defense to the enforcement of the endorsement's limitations. *Hardin, supra.* Because the endorsement made no misrepresentation and because neither defendant-agent nor defendant-insurer violated any duty owed plaintiffs, neither defendant could possibly be guilty of any unfair trade practice pursuant to G.S. 75-1.1, if, *arguendo*, such statute contemplates regulating the insurance industry at all.

[6]    Plaintiffs' final contention, that the trial court improperly granted summary judgment for defendant-insurer even though no motion was made by defendant-insurer until the day of the hearing, is also without merit. G.S. 1A-1, Rule 56(c) does not require that a party move for summary judgment in order to be entitled to it.

> ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to *any* material fact and that *any* party is entitled to a judgment as a matter of law. . . ." [Emphasis added.]

Thus, when appropriate, summary judgment may be rendered against the moving party. The fact that defendant-insurer's motion was not made within the time limit is therefore immaterial; it

need not have been made at all. Plaintiffs' motion, made well before the deadline, triggered the evaluation that led to the grant. Shuford, N.C. Civil Prac. & Proc., § 56.6.

The trial court's judgment is

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.