ROY E. BAGGETT AND PATRICIA BAGGETT, INDIVIDUALLY AND D/B/A BOUTIQUE HOUSE-PORT OF SWANSBORO, PLAINTIFFS v. SUMMERLIN INSURANCE AND REALTY, INC., CHARLES W. SUMMERLIN, AND CHARLES W. SUMMERLIN, JR., D/B/A SUMMERLIN INSURANCE CENTER AND CHARLES W. SUMMERLIN, JR., DEFENDANTS

No. COA00-458

(Filed 17 April 2001)

**1. Insurance— flood—"all-risk" coverage—duty to provide necessary coverage—summary judgment**

The trial court erred by granting summary judgment for defendant insurance agency and defendant insurance agent on the issue of whether defendants assumed a duty to obtain flood insurance for plaintiffs by assuring plaintiffs they would provide the necessary coverage, because the evidence in the light most favorable to plaintiffs reveals substantial evidence that: (1) the agent was aware of the location of the property near a river and advised plaintiffs that he would provide them with the necessary coverage; (2) the agent had taken care of plaintiffs' insurance needs throughout the relationship of the parties, including placing plaintiffs' coverage with another company when he was no longer doing business with the company which had previously written plaintiffs' coverage; and (3) the agent specifically told plaintiffs they had "all-risk" coverage which was all they needed.

### 2. Insurance— failure to read insurance policy—contributory negligence—summary judgment

The trial court erred by granting summary judgment for defendant insurance agency and defendant insurance agent on the issue of plaintiffs' alleged contributory negligence in failing to read the pertinent insurance policy which specifically excluded any coverage for flood damage, because the statement of the agent that he would provide plaintiffs with the necessary coverage taken in context with the prior relationship plaintiffs had with the agent, along with the agent's knowledge of the location of the property near a river, is sufficient evidence to support a conclusion that a reasonably prudent person would not have read the insurance contract and would not have seen the explicit flood exclusions.

Judge TYSON dissenting.

Appeal by plaintiffs from order filed 7 February 2000 by Judge W. Allen Cobb, Jr. in Onslow County Superior Court. Heard in the Court of Appeals 30 January 2001.

*Ellis, Hooper, Warlick & Morgan, L.L.P., by John D. Warlick, Jr., for plaintiff-appellants.*

*Manning, Fulton & Skinner, P.A., by Michael T. Medford, for defendant-appellees.*

GREENE, Judge.

Roy E. Baggett (Mr. Baggett) and Patricia Baggett (Mrs. Baggett) (collectively, Plaintiffs), individually and d/b/a Boutique House-Port of Swansboro, appeal an order filed 7 February 2000 granting a motion for summary judgment in favor of Summerlin Insurance and Realty, Inc. (the Summerlin Agency) and Charles W. Summerlin, Jr. (Summerlin) (collectively, Defendants).[1]

Plaintiffs have owned the Boutique House, a ladies clothing store in Jacksonville, since 1981. Jamie D. McGlaughon (McGlaughon), of the Bailey Insurance and Realty Company, provided commercial insurance coverage on the Boutique House from May 1990 until July 1993 and then again from July 1996 until the present. The coverage

---

1. We note Plaintiffs voluntarily dismissed the action against Charles W. Summerlin and Charles W. Summerlin, Jr. d/b/a Summerlin Insurance Center and Charles W. Summerlin, individually.

for the Boutique House included coverage for: the building in the amount of $122,500.00; business personal property in the amount of $100,000.00; loss of income, money and securities, exterior signs and glass; and business liability in the amount of $1,000,000.00. The policy McGlaughon provided Plaintiffs was an "all-risk coverage" policy which specifically excluded flood coverage. In fact, McGlaughon stated in his deposition testimony that most commercial policies excluded flood coverage and clients would have to obtain separate coverage for flood insurance.

In a deposition taken 25 November 1998, Mrs. Baggett testified that in 1993 Summerlin asked to look at the insurance policy Plaintiffs had with McGlaughon so Summerlin could provide Plaintiffs with a proposal for a policy with the Summerlin Agency. It was Plaintiffs' understanding that Summerlin was proposing coverage on the Boutique House equivalent to what Plaintiffs had with McGlaughon. Summerlin gave Plaintiffs an insurance quote providing for coverage at a less expensive annual premium than the amount Plaintiffs were paying to McGlaughon. Plaintiffs canceled McGlaughon's coverage of the Boutique House and procured coverage with the Summerlin Agency. Plaintiffs never indicated to McGlaughon they were getting greater property insurance coverage with the Summerlin Agency than with McGlaughon, only that they were getting less expensive coverage. In fact, it was Mrs. Baggett's understanding that Summerlin was providing her with coverage equivalent to what she had with McGlaughon.

The Summerlin Agency provided Plaintiffs with an "all-risk coverage" policy (the Summerlin Policy). The Summerlin Policy provided coverage for: the building in the amount of $122,500.00; business personal property in the amount of $150,000.00; general liability in the amount of $1,000,000.00; medical expenses in the amount of $5,000.00 per person; and fire legal liability in the amount of $100,000.00. When asked if the Summerlin Policy included peak inventory coverage, Summerlin told Plaintiffs that they had "an all-risk coverage. That's all [they] would need." The Summerlin Policy, however, specifically excluded flood coverage and provided:

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

BAGGETT v. SUMMERLIN INS. & REALTY, INC.

[143 N.C. App. 43 (2001)]

### g. Water

> (1) Flood, surface water, waves, tides, tidal waves, over-flow of any body of water, or their spray, all whether driven by wind or not . . . .

Summerlin stated in his affidavit that he did not tell Mrs. Baggett he would procure flood insurance for the Boutique House and recalled "pointing out to [Mrs.] Baggett in a conversation," near the time he sought to procure insurance on the Boutique House, "that the coverage of any insurance policy is limited by exclusions set forth in the policy and that the exclusion for loss caused by flood and earthquake is a standard exclusion."

Mrs. Baggett stated she did not have flood insurance on the Boutique House in Jacksonville and she never asked Summerlin to procure flood insurance on the Boutique House. Mrs. Baggett was satisfied the Summerlin policy provided her with identical coverage as that provided by McGlaughon at a cheaper rate.

From July 1993 through July 1996, Plaintiffs received several renewal notices for the Summerlin Policy. Each time Plaintiffs received the renewal notice, they paid the premium without questioning Summerlin on the coverage. During the 1994/1995 policy coverage period, Summerlin advised Mrs. Baggett she "would be receiving a Notice of Cancellation of the insurance coverage . . . . He advised [her] not to worry about it[,] . . . he would place the coverage with some other company . . . [because] he was no longer doing business with the company which had previously written [Plaintiffs'] coverage."

In August 1995, Plaintiffs entered into a lease of a building to operate a ladies and children clothing store in Swansboro (the Boutique House-Port). Mrs. Baggett telephoned Summerlin and informed him of her lease of the Boutique House-Port and the requirement she have $250,000.00 of liability insurance, but that she did not "know if there's anything else [she] need[ed]." Summerlin stated he knew the location of the Boutique House-Port and was aware it was near the White Oak River. According to Mrs. Baggett, Summerlin told her he would provide "the necessary coverage." Summerlin procured the additional liability coverage as requested by Mrs. Baggett and did not offer Mrs. Baggett any other coverage. In August 1995, Mrs. Baggett received a two-page amendment adding the Boutique House-Port to the Summerlin Policy. Mrs. Baggett stated she did not have any conversation with Summerlin about flood coverage.

BAGGETT v. SUMMERLIN INS. & REALTY, INC.

[143 N.C. App. 43 (2001)]

In July 1996, as Hurricane Bertha was near Puerto Rico, Mrs. Baggett telephoned Summerlin and informed him that Hurricane Bertha was "down off the coast of Puerto Rico" and asked "if that thing comes, [is the Boutique House-Port] going to be covered down there on that water front." Summerlin responded, " 'well, maybe you will or maybe you won't.' " After asking Summerlin what he meant by his statement and informing him that she had a lot of inventory at the Boutique House-Port, Summerlin told Mrs. Baggett " 'it's got a woman's name, so it's not going to be much to it.' " Mrs. Baggett did not inquire further and ended her conversation with Summerlin. Summerlin never gave Mrs. Baggett any assurance that the Boutique House-Port would be fully covered and she never discussed with Summerlin moving any of her inventory from the Boutique House-Port.

On 12 July 1996, Plaintiffs rented a truck to move the inventory from the Boutique House-Port, however, rising waters from the White Oak River and the Intracoastal Waterway prevented Plaintiffs from moving the inventory. Hurricane Bertha caused severe damage to the Boutique House-Port's interior and its fixtures and ruined most of Plaintiffs' inventory. After inspecting the Boutique House-Port, Mr. Baggett went to Summerlin's office to explain that the Boutique House-Port had flooded and asked Summerlin what Plaintiffs should do. Summerlin told Mr. Baggett to " 'go ahead and act just like [Plaintiffs didn't] have [any] insurance or anything. . . . Go down there and clean the mess up. . . . Take the carpet out, do whatever you got to do to try to sacrifice the merchandise you can.' " Mr. Baggett asked Summerlin if he should wait until after an insurance adjuster looked at the Boutique House-Port before cleaning the store. Summerlin told Mr. Baggett to go ahead and start cleaning and he would get an insurance adjuster to the Boutique House-Port as soon as possible. An insurance adjuster came to the Boutique House-Port a few days later and took pictures. A week later, the insurance adjuster informed Plaintiffs the Summerlin Policy did not cover the damage done to the Boutique House-Port. Mr. Baggett read the Summerlin Policy and discovered it was an "all-risk policy" and went to Summerlin to inquire about the coverage. Summerlin confirmed the Boutique House-Port was not covered for flood damage.

At no time during the period Plaintiffs had the Summerlin Policy did Plaintiffs ask Summerlin to procure flood coverage and Summerlin did not indicate to Plaintiffs they had flood coverage. According to Defendants' telephone call sheet, Mrs. Baggett stated

she did not want sign, glass, or flood coverage for the Boutique House-Port. Summerlin also stated that as Hurricane Bertha approached, he reminded Mrs. Baggett she did not have flood coverage.

After learning the Summerlin policy did not cover the Boutique House-Port for flood damage, Plaintiffs canceled their insurance with Summerlin on 17 July 1996. On 2 January 1998, Plaintiffs filed a complaint alleging Defendants: negligently failed to procure flood insurance on the Boutique House-Port; did not timely notify Plaintiffs of their failure to obtain flood insurance; breached their contract; and committed unfair and deceptive trade practices.[2] Defendants filed a motion for summary judgment on 12 August 1999 and the trial court granted Defendants' motion.

_____

The issues are whether: (I) an agent, by making a promise to a customer to obtain "the necessary coverage" on a building located near the White Oak River, undertakes a duty to obtain flood insurance; and (II) Plaintiffs were negligent in not reading the Summerlin Policy.

I

[1] Plaintiffs argue a genuine issue of material fact exists as to whether Defendants, by assuring Plaintiffs they would provide "the necessary coverage," assumed a duty to obtain flood insurance for Plaintiffs.

An insurance agent, who undertakes an obligation to procure an insurance policy for a customer, has a duty to procure that insurance and will be held liable (in negligence) for any damage resulting from a breach of that duty. *Barnett v. Security Ins. Co. of Hartford*, 84 N.C. App. 376, 378, 352 S.E.2d 855, 856-57 (1987). Communications between a customer and an agent, as well as their conduct, are relevant on the question of whether the agent has undertaken to procure a policy of insurance. *Alford v. Tudor Hall and Assoc. Inc.*, 75 N.C. App. 279, 282, 330 S.E.2d 830, 832, *disc. review denied*, 315 N.C. 182, 337 S.E.2d 855 (1985). For example: if the communications and/or conduct " 'lull the [customer] into the belief that such insurance has been effected, the law will impose upon the . . . agent the obliga-

_____

2. Plaintiffs have presented no argument in their brief to this Court concerning their allegations of breach of contract or unfair and deceptive trade practices. Accordingly, we do not address whether summary judgment was properly granted on these claims.

BAGGETT v. SUMMERLIN INS. & REALTY, INC.

[143 N.C. App. 43 (2001)]

tion' " to procure the insurance. *Id.* (citation omitted). For another example: "if the parties have had prior dealings where the agent customarily has taken care of the customer's needs without consultation," then a legal duty can arise to procure the insurance, even "without express and detailed orders from the customer and acceptance by the agent." *Id.*

In this case, the evidence viewed in the light most favorable to Plaintiffs, *see Wrenn v. Byrd*, 120 N.C. App. 761, 763, 464 S.E.2d 89, 90 (1995) (must view evidence in light most favorable to non-moving party on motion for summary judgment), *disc. review denied*, 342 N.C. 666, 467 S.E.2d 738 (1996), reveals substantial evidence Summerlin assumed an obligation to procure flood insurance on the Boutique House-Port property.[3] Summerlin was aware of the location of the property and advised Mrs. Baggett he would provide her with "the necessary coverage." Throughout the relationship of the parties, Summerlin had taken care of Mrs. Baggett's insurance needs, including placing Plaintiffs' coverage with another company when he was no longer doing business with the company which had previously written Plaintiffs' coverage. Summerlin specifically told Plaintiffs they had "all-risk" coverage, which was all they needed. Accordingly, a genuine issue of fact exists and the trial court erred in granting summary judgment for Defendants on this basis.[4]

II

[2] Defendants argue, in the alternative, Plaintiffs were contributorily negligent and, thus, barred from any recovery because they failed to read the Summerlin Policy which specifically excluded any coverage for flood damage.

A person who signs a contract generally has a duty to read it and become knowledgeable of its contents and is negligent if he fails to do so. *Elam v. Smithdeal Realty & Ins. Co.*, 182 N.C. 600, 603, 109 S.E. 632, 634 (1921). If, however, a person of reasonable business pru-

---

3. "Summary judgment is proper where there is no genuine issue as to any material fact." *Johnson v. Trustees of Durham Technical Community College*, 139 N.C. App. 676, 680, 535 S.E.2d 357, 361, *appeal dismissed and disc review denied*, 353 N.C. 265, —— S.E.2d —— (2000); N.C.G.S. § 1A-1, Rule 56 (1999). "An issue is genuine where it is supported by substantial evidence." *Johnson*, 139 N.C. App. at 681, 535 S.E.2d at 361.

4. As there is no dispute in this record that Summerlin was the agent of the Summerlin Agency in his transactions with Mrs. Baggett, summary judgment must be reversed as to both Defendants.

BAGGETT v. SUMMERLIN INS. & REALTY, INC.

[143 N.C. App. 43 (2001)]

dence would have been misled or placed off his guard, the failure to read the contract does not constitute negligence. *Id.; see R-Anell Homes, Inc. v. Alexander & Alexander, Inc.,* 62 N.C. App. 653, 659, 303 S.E.2d 573, 577 (1983) (a jury could "find that [a] plaintiff's reliance on [a] defendant's presumably superior knowledge of the insurance business was reasonable, and [the] plaintiff was not contributorily negligent" in failing to read an insurance policy).

In this case, there is no indication Plaintiffs read the Summerlin Policy as it pertained to coverage and exclusions on the Boutique House-Port. The statement of Summerlin that he would provide Plaintiffs with "the necessary coverage," taken in the context of the prior relationship Plaintiffs had with Summerlin, and the latter's knowledge of the location of the property near the White Oak River, however, is sufficient evidence to support a conclusion that a reasonably prudent person would not have read the insurance contract and, thus, not have seen the explicit flood exclusions. Thus, a genuine issue of fact exists and summary judgment cannot be supported on this basis.

Reversed and remanded.

Judge JOHN concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

I would affirm summary judgment in favor of defendants. All parties in this transaction were burdened with certain duties. Defendants had a duty to make an application for the insurance coverage specifically requested by plaintiffs. Plaintiffs had a duty to read their insurance policy. Viewing the evidence in the light most favorable to plaintiffs, defendants satisfied their duty, and plaintiffs did not.

## I. Agent's and Insurer's Duty

"An insurance agent has a duty to procure additional insurance for a policyholder at the request of the policyholder." *Phillips v. State Farm Mut. Auto Ins. Co.,* 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 (1998) (citation omitted). "[This] duty does not, however, obligate the insurer or its agent to procure a policy for the insured <u>which had not been requested</u>." *Id.* (emphasis supplied) (citation omitted). Thus, the

**BAGGETT v. SUMMERLIN INS. & REALTY, INC.**

[143 N.C. App. 43 (2001)]

insurance agent's duty to a policyholder is limited to the nature of the policyholder's request to the agent. *Id.*; *see also Bigger v. Vista Sales & Mktg., Inc.*, 131 N.C. App. 101, 505 S.E.2d 891 (1998) (holding that insurance agent who procured requested liability insurance was not liable for failing to recommend workers' compensation coverage despite a 28-year business relationship between insurance agent and insured).

Plaintiffs' evidence shows that Mrs. Baggett provided to Summerlin a copy of her existing insurance policy. Mrs. Baggett requested Summerlin to provide "the same coverage" at a cheaper rate. In response to that request, Summerlin quoted a premium and ordered an insurance policy with terms substantially similar to plaintiffs' existing policy. Both policies expressly excluded coverage for losses due to flood damage.

Plaintiffs' evidence reveals that Summerlin made no assertion to plaintiffs that their insurance policy included flood coverage. As the majority points out, Mrs. Baggett testified that plaintiffs never asked Summerlin to procure flood coverage. Summerlin never indicated to plaintiffs that the policy covered flood losses. The record is undisputed that Mrs. Baggett specifically requested and knew that Summerlin only replaced the existing coverage. It is equally undisputed that the prior policy also excluded coverage for flood losses.

Plaintiffs argue, and the majority holds, that because: (1) Summerlin knew the property was near the waterfront; and, (2) that he told plaintiffs they had "all risk" coverage, a genuine issue of material fact is raised whether Summerlin assumed an obligation to procure flood insurance. This Court rejected a similar argument in *Greenway v. N.C. Farm Bureau Mut. Ins. Co.*, 35 N.C. App. 308, 241 S.E.2d 339 (1978).

In *Greenway*, defendant-insurance company insured plaintiffs' rural home against loss by fire. Plaintiffs' insurance policy stated that the plaintiffs' home must be equipped with a telephone system for 100 percent coverage. Plaintiffs' home burned without a telephone. The insurance company paid 75 percent of the agreed value. Plaintiffs brought suit against the insurance agent and company to recover the balance allegedly due under the insurance policy. Plaintiffs alleged, *inter alia*, negligence and misrepresentation on the part of defendants.

Plaintiff claimed he was never informed of the telephone require-
ment for full coverage and never discussed rates, but that defend-
ant-agent told him he would have <u>full coverage</u>. The application
he signed made no mention of the telephone requirement.
Plaintiffs received their policy . . . but never read it . . . Defendant-
Agent came to the house at least twice while it was under con-
struction, [saw they had no telephone], and never mentioned any-
thing about a telephone [requirement].

*Greenway*, 35 N.C. App. at 310, 241 S.E.2d at 340-41 (emphasis sup-
plied). Plaintiffs argued that defendants waived the telephone
requirement for full coverage. Plaintiffs asserted the insurance com-
pany, via its agent, misrepresented to plaintiffs that they had "full cov-
erage," knew the dwelling did not contain a telephone, and accepted
premium payments. *Id.* In rejecting these arguments, this Court
wrote:

There is conflicting testimony as to whether plaintiffs knew of
the telephone requirement. This conflict, however, does not raise
a material issue of fact. It is clearly not the duty of an insurer or
its agent to inquire and inform an insured as to all parts of his
policy:

We cannot approve the position that, in the absence of a
request, it was the agent's legal duty to explain the meaning
and effect of all the provisions in the policy, or that his failure
to inquire . . . was a waiver of the requirement. *Hardin v. Ins.
Co.*, 189 N.C. 423, 427, 127 S.E.2d 353, 355 (1925).

*Greenway*, 35 N.C. App. at 314, 241 S.E.2d at 343.

Summerlin assumed the duty to procure an insurance policy with
the same or similar coverage as the plaintiffs' existing policy.
Summerlin fulfilled that duty. The existing policy did not contain cov-
erage for flood losses. Plaintiffs could not have reasonably expected
Summerlin to procure flood insurance based on Mrs. Baggett's
request *to provide insurance in accordance with the existing policy.*
Moreover, both Summerlin and plaintiffs' previous insurance agent,
McGlaughon, testified that they informed plaintiffs that neither policy
contained coverage for flood losses. When the facts are viewed in a
light most favorable to plaintiffs, there is no genuine issue of ma-
terial fact whether Summerlin assumed responsibility to procure
flood insurance.

BAGGETT v. SUMMERLIN INS. & REALTY, INC.

[143 N.C. App. 43 (2001)]

## II.  Insured's Duty

There appears to be issues of fact: (1) whether Summerlin advised plaintiffs that they had no flood insurance, and (2) whether plaintiffs understood that "all risk" coverage excluded coverage against flooding. Resolving those factual disputes in plaintiffs' favor does not help plaintiffs' case.

The majority's opinion points out that policyholders in North Carolina are under a duty to read their insurance policies.

> '[A]n insurance agent is not required to affirmatively warn his customers of provisions contained in insurance policies.' 16C J. Appleman, *Insurance Law and Practice* § 9168 at 176 (1981). (citation omitted). Persons entering contracts of insurance, like other contracts, have a duty to read them and ordinarily are charged with knowledge of their contents. *Setzer v. Ins. Co.*, 257 N.C. 396, 401-02, 126 S.E.2d 135, 138-39 (1962).

*Nationwide Mut. Ins. Co. v. Edwards*, 67 N.C. App. 1, 7-8, 312 S.E.2d 656, 661 (1984). "[T]he receipt and retention of the policy by the insured has been held to preclude the right to a reformation." 43 Am. Jur. 2d *Insurance* § 371 (1982). Where a party has reasonable opportunity to read the instrument in question, and the language of the instrument is clear, unambiguous and easily understood, failure to read the instrument bars that party from asserting its belief that the policy contained provisions which it does not. *Setzer, supra.*

> The North Carolina Court has frequently said that where no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract prepared by the other party, his failure to read when he had the opportunity to do so will bar his right to reformation.

*Setzer*, 257 N.C. at 401, 126 S.E.2d at 139; *see also, Welch v. Ins. Co.*, 196 N.C. 546, 146 S.E. 216 (1928) (Insured was not entitled to relief for insurance agent's alleged misrepresentation as to policy coverage where insured had a copy of the policy for four months prior to the loss); *Gordon v. Fidelity and Casualty Company of N.Y.*, 238 S.C. 438, 120 S.E.2d 509 (1961) (Insured was not entitled to relief for fraud and deceit on the basis that the representations of the insurance agent were at variance with the actual policy terms, where insured had a copy of his policy for more than eight months, with full opportunity to learn the contents and coverage provided therein).

BAGGETT v. SUMMERLIN INS. & REALTY, INC.

[143 N.C. App. 43 (2001)]

In this case, plaintiffs do not contend that the provisions were ambiguous or difficult to understand. However, plaintiffs contend that they were misled into believing they had flood coverage, and are excused from their failure to read the policy.

The majority's opinion cites *R-Anell Homes, Inc. v. Alexander & Alexander, Inc.*, 62 N.C. App. 653, 303 S.E.2d 573 (1983), to support the existence of a genuine issue of material fact of whether Summerlin negligently misled plaintiffs to believe they had flood insurance. In *R-Anell Homes*, plaintiff purchased a blanket building insurance policy and a building contents policy with defendant-insurance company. During renovations, plaintiff removed the Southern Bell telephone system from his building and installed his own telephone system. Plaintiff called defendant-insurance company and told him about the new telephone system and asked "about getting insurance coverage." *Id.* at 655, 303 S.E.2d at 575. According to plaintiff's evidence, an employee of the insurance company stated that the system was "part of the building and was covered under the blanket policy on the building" and that "defendant need not extend the coverage on the building contents policy." *Id.* The employee affirmatively represented that plaintiff had coverage for the new telephone system. This was incorrect advice, and directly contrary to the language of the insurance contract. Under these facts, this Court held that "a jury could find that plaintiff's reliance on defendant's presumably superior knowledge of the insurance business was reasonable, and defendant was not contributorily negligent." *Id.* at 659, 393 S.E.2d at 577.

In *Elam v. Smithdeal Realty Co.*, 182 N.C. 641, 109 S.E. 632 (1921), plaintiff purchased an automobile insurance policy through defendant insurance agency. The insurance agent affirmatively represented that plaintiff's policy contained automobile collision coverage. This advice was contrary to the express language of the policy. Plaintiff suffered an accident, and the insurance company denied coverage. The evidence showed that at the time of the accident the policy was one week old, and had not been delivered directly to the plaintiff. The Court held that these facts created a jury question as to whether defendant negligently misled plaintiff into believing coverage existed, and whether plaintiff had sufficient opportunity to discover the exclusions of his policy, excusing his failure to read the policy.

In the present case, plaintiffs contend that the label "all risk" on two insurance binders, and Summerlin's assertion that they had

ALLEN v. ROBERTS ELEC. CONTR'RS

[143 N.C. App. 55 (2001)]

"all-risk" coverage obligated Summerlin to procure flood insurance. The label "all risk" only appears on the 1993 and 1995 insurance binders. The binders expressly state that coverage under the binder is temporary, and that the binders are superceded upon issuance of the final insurance policy. The words "all risk" do not appear on any insurance policy. The flood exclusion is clearly set forth in the insurance policy.

Unlike the insurance agents in *R-Anell Homes* and *Elam*, Summerlin never affirmatively represented to plaintiffs that they had flood insurance. Mrs. Baggett testified that there was no discussion with Summerlin about flood insurance until shortly before Hurricane Bertha hit the North Carolina coast. Furthermore, plaintiffs had the policy in their possession, several years prior to the date of the loss. Summerlin did not have a duty to point out the exclusions in the written insurance policy where those exclusions did not negate a particular coverage specifically requested by plaintiffs. I would hold it unnecessary to look beyond the plain language of the insurance contract, which expressly excludes coverage for flood losses.

I would affirm the decision of the learned trial court. For these reasons, I respectfully dissent.