

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2003

# Gouge v. Metro Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4252

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Gouge v. Metro Life Ins Co" (2003). *2003 Decisions.* Paper 487.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/487

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4252

———

DANNY LEECE GOUGE,
MERRIETTA KAY GOUGE,

Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY,
JACK E. DUCKWORTH,

Appellees.

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 97-CV-1020)
District Judge:  The Honorable Donetta W. Ambrose

———

Submitted under Third Circuit LAR 34.1(a)
Friday, May 16, 2003

Before: RENDELL, SMITH and ALDISERT, Circuit Judges.

(Filed: June 3, 2003)

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

Danny Leece Gouge and Merrietta Kay Gouge, the insureds under certain insurance policies issued by Metropolitan Life Insurance Company, appeal from the district court's decision to grant summary judgment in favor of the company and agent Jack Duckworth on the grounds that the Appellants' fraudulent representation claims were barred by state statutes of limitations. The law of North Carolina applies in this diversity action. Because we agree with the district court's decision, we will affirm without reaching the merits of Appellants' substantive claims that Duckworth had made fraudulent oral misrepresentations in inducing them to purchase a number of insurance policies.

## I.

As we write only for the parties who are familiar with the facts and contentions raised, we will limit our discussion to the controlling legal issues.

Because Appellants did not raise the issue of the proper length of the statute of limitations for an alleged breach of a fiduciary duty in the district court, we will not notice this argument. Gass v. Virgin Islands Tel. Corp., 311 F.3d 237, 245 (3d Cir. 2002) (noting that the "failure to raise an issue in the district court constitutes a waiver of that argument"). We shall instead confine ourselves to the statutes of limitations for fraudulent representation.

North Carolina General Statute § 1-52(9) states that a claim "[f]or relief on the grounds of fraud or mistake" must be filed within three years of the aggrieved party's

2

"discovery . . . of the facts constituting the fraud or mistake."  Under this provision,

"discovery" means actual discovery or when the fraud should have been discovered in the

exercise of reasonable diligence.  Grubb Props. Inc. v. Simms Inv. Co., 400 S.E.2d 85, 88

(N.C. App. 1990) (concluding that plaintiff failed to exercise reasonable diligence as a

matter of law where it neglected to discover for nearly four years that a tract of land was

not included in a deed).  Almost 70 years ago, the North Carolina Supreme Court

remarked that:

> [a] man should not be allowed to close his eyes to facts observable by ordinary attention and maintain for his own advantage the position of ignorance.  Such principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish.

Moore v. Fidelity and Casualty Co., 177 S.E. 406, 408 (N.C. 1934).

## II.

It is against these statutes and case law precepts that we examine the adjudicative

facts present here.

When the policies were issued, the Appellants owned and operated both Gouge

Trucking Company (which earned almost $12 million in one year) and Gouge Tire

Company, and operated a tobacco farm for Mr. Gouge's father.  They owned 120 acres of

property in Greenville, Tennessee and a 2½-acre property in Burnsville, North Carolina.

At the time of her deposition, Mrs. Gouge owned and operated a drug and alcohol testing

business, which also included a trucking business.

3

Each policy contained the following general provisions:

> The Contract.  This policy includes any riders and, with the application attached when the policy is issued, makes up the entire contract.  All statements in the application will be representations and not warranty.  <u>No statement will be used to contest the policy unless it appears in the application.</u>

* * *

> Limitation on Sales Representative's Authority.  No sales representative or other person except our President, Secretary, or a Vice-President may a) make or change any contract of insurance; or b) change or waive any of the terms of the policy.  Any change must be in writing and signed by our President, Secretary or Vice-President.

Joint Appendix at 519, 540 (emphasis added).  Aside from noting this inability of sales representatives to modify the terms of the contract, the life insurance policies issued by Metropolitan Life through its agent, Jack Duckworth, also contained clear language explaining their terms and the premium payment obligations.  The word "retirement" never appeared in any of the policies issued to the plaintiffs.  The words "life insurance" however, appear on the cover page, and the policies make multiple references to the word "insurance."

In their suit, the Gouges complained that Duckworth told them that the premiums for the policies "would need to be paid for only five years, or possibly six years."  Id. at 22. When questioned about the language that appeared in their policies, the Appellants admitted that their policies instead required premiums for the number of years stated on paper.  During their depositions, the Gouges also testified that Duckworth wrote

4

comments on the policy illustrations regarding the length of premium payments and the monthly income payments that they would receive. Id. at 180-187, 427, 432. The policies, however, do not contain a single reference to a monthly income amount that would be received. Mr. Gouge further admitted that he understood if he stopped making payments the policy would lapse.

In contrast to their present allegations that they thought that they were buying retirement policies, the Gouges have acknowledged that they knew at the time of the purchase of their policies that they were buying life insurance. In a written complaint to the North Carolina Department of Insurance, Mr. Gouge stated he "was approached by Mr. Jack Duckworth of Metropolitan Life . . . to purchase a life policy for myself and my wife." Id. at 288. In their civil complaint, the Gouges alleged that "Duckworth suggested [they] should buy life insurance" – albeit for retirement purposes, thus conceding that they knew the nature of what they were buying. Id. at 21-22.

A review of the Gouges' financial statements for their trucking business reveals that the cash values of their life insurance policies were declared an asset of their business. During her deposition, Mrs. Gouge testified that Duckworth was presenting a life insurance policy and that the Gouges knew that they were buying insurance. Id. at 376, 380, 385. She further testified that, on a number of occasions after she received her policy, she was concerned that the word "retirement" did not appear anywhere on her documents. Notwithstanding these concerns, the Gouges continued to pay premiums for

5

their six life insurance policies. It was not until 1997 – seven years after the first policy was issued and almost 4½ years after the last policy was issued – that they filed a complaint against Metropolitan Life.

Appellants were provided ample opportunity – and indeed had the legal obligation – to read the policies and to return them if they were not satisfied. They simply chose not to do so. Had the married businesspeople read their policies, they would have seen immediately that they had a long-term, ongoing obligation to pay premiums and that they purchased life insurance policies. Appellants' failure to exercise the right to return the policies constituted acceptance by which they are now bound.

The limitations period for their fraudulent representation claim is three years. The policies were purchased between December 1989 and September 1992, and the Gouges were put on actual notice of the discrepancies between the express written terms of the policies and the alleged oral representations made to them when they received their policies. Nevertheless, they did not bring the lawsuit until November 1996 after the expiration of the limitations period.

Under North Carolina law, policyholders are under a duty to read their insurance policies. Elam v. Smithdeal Realty & Ins. Co., 109 S.E. 632, 634 (N.C. 1921). Where a party has reasonable opportunity to read the instrument in question and the language of the instrument is clear, unambiguous, and easily understood, failure to read the instrument bars that party from asserting his belief that the policy contained provisions which it does

6

not.  Baggett v. Summerlin Ins. & Realty Co., 554 S.E.2d 336 (N.C. 2001) (citing Baggett v. Summerlin Ins. & Realty Co., 545 S.E.2d 462, 468-469 (N.C. App. 2001) (Tyson, J., dissenting).

In light of the foregoing, we agree with the district court that Appellants' claims were barred by the statute of limitations.

\* \* \* \* \*

We have considered all contentions raised by the parties and conclude that no further discussion is necessary.

The judgment of the district court will be affirmed.

TO THE CLERK:

Please file the foregoing not precedential opinion.

　　　　　　　　　　　　　　　　　　 /s/   Ruggero J. Aldisert
　　　　　　　　　　　　　　　　　　 Circuit Judge

7